[S. F. No. 19858.   In Bank.   Oct. 27, 1959.]

KEY SYSTEM TRANSIT LINES (a Corporation) et al., Appellants, v. PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation) et al., Respondents.

Donahue, Richards & Gallagher, Joseph A. Woods, Jr., and Thomas Schneider for Appellants.

Keith, Creede & Sedgwick, Frank J. Creede, Sedgwick, Detert, Moran & Arnold and Scott Conley for Respondents.

Edmund G. Brown, and Stanley Mosk, Attorneys General, and Harold B. Haas, Deputy Attorney General, as Amici Curiae on behalf of Respondents.

SPENCE, J.—Plaintiffs sought reformation of a policy of workmen's compensation insurance issued by the defendant insurance company, and also damages for alleged breach of the terms of the policy as reformed. Defendants successfully interposed the defense of illegality to defeat such reformation and enforcement. From the judgment accordingly entered, plaintiffs appeal.

The main question to be determined is whether the policy, in the event of its reformation, would have been illegal and therefore unenforceable. Our review of the pertinent statutes leads us to the conclusion that the trial court properly so held, and that the judgment should be affirmed.

Plaintiffs alleged that in May, 1950, they entered into a workmen's compensation insurance contract with defendants. The policy was to be effective for one year, May 14, 1950, to May 14, 1951. A "Participation Endorsement" was attached to the policy and incorporated as a part thereof. The material portion of that endorsement reads as follows:

"After the expiration of this Policy, this Employer shall be entitled to a refund payable from any surplus of premiums derived from all compensation insurance policies insuring Employers and Employees under the Workmen's Compensation Insurance and Safety Laws of the State of California, and which has accrued after adequate provision has been made for all losses, loss expenses, reserves, taxes and other charges. Such refund, if any, shall be computed as follows: From the amount of the entire premium earned and paid to the Company under this Policy, there shall be deducted amounts equal to the cost of incurred losses, including reserves

on open claims, and incurred loss and other expenses chargeable to this Policy. The amount of the balance, if any, shall be payable to this policyholder as may be provided in the authorized refund plan of the Company in effect and applicable to this Policy.''

Plaintiffs further alleged that as an inducement to plaintiffs, defendants had represented that there was to be included, as part of the policy, a participation plan under which the agreed advance premium was to be returned to plaintiffs to the extent that the premium exceeded the sum of (1) the total amount of losses under the policy, including open reserves, and (2) 25.5 percent of the premium, as administration fees. Calculation of this amount would be made 18 months after the expiration date of the policy, the period allowed for final settlement of all claims between the parties. Plaintiffs entered into the contract with defendants in reliance on these oral representations; but through the mutual mistake of the parties, or mistake of plaintiffs and fraud of defendants, the policy contained only the quoted ''Participation Endorsement'' and omitted the provisions of the oral agreement.

Plaintiffs finally alleged facts indicating that under the participation plan set forth in the oral agreement, they were entitled to a refund of $21,703.67 and that defendants had an accumulated surplus of premiums derived from California compensation business to pay such refund but they had only paid plaintiffs $2,665 of the amount owing. Accordingly, plaintiffs prayed that the contract be reformed to include the oral agreement and that the reformed policy be enforced, with damages to them in the amount of $19,038.67.

Defendants' answer denied most of the allegations of plaintiffs' complaint but admitted the execution and delivery of the policy, and the payment of $2,665 as a ''participating policy holders' dividend.'' Their answer also raised certain special defenses, including that of illegality if the contract were reformed as plaintiffs prayed. On defendants' motion, there was a trial of the special defenses (Code Civ. Proc., § 597), and for the purpose of the trial on such limited issues, the court accepted the allegations of the complaint as true. It found that the reformed agreement would be illegal and unenforceable as calling for ''a rebate'' and resulting in ''the charging of a premium less than that established by'' state

law. Accordingly, it concluded that the defense of illegality constituted a bar to plaintiffs' action.

On this appeal, plaintiffs take the position (1) that reformation was "unnecessary" and that they are entitled to enforcement of the policy as issued through "interpretation and explanation of its terms" in the light of the oral agreement between the parties and (2) that in any event, they are entitled to reformation and enforcement, as the reformed policy would not provide for a rebate in violation of the minimum rating law (Ins. Code, §§ 11730-11742) but merely for a participating dividend as permitted by sections 763 and 11738 of the Insurance Code. On the other hand, defendants contend that plaintiffs have stated no cause of action under the policy as issued, and that the enforcement of the reformed policy would violate the minimum rating and antirebate provisions of the Insurance Code. The Insurance Commissioner as amicus curiae joins defendants in these contentions.

Defendants rely heavily upon the decision of this court in *Contractor's Safety Assn.* v. *California Comp. Ins. Co.*, 48 Cal.2d 71 [307 P.2d 626], in which a collateral agreement, not appearing in the policy, was held illegal. ■ The purpose of the minimum rating law was there discussed at pages 74 and 75 as follows:

"The minimum rating law (now Ins. Code, §§ 11730-11742) was enacted in 1915 to eliminate irresponsible premium policies which developed in response to competitive conditions in the insurance field. The purpose of this law was to require a premium rate which would assure adequate reserves to meet claims as they matured. Obviously, the purpose of the law would be frustrated if collateral agreements could effect a reduction of the premium. For this reason agreements affecting the premium were brought within the scope of statutory and administrative regulation."

Plaintiffs seek to distinguish the Contractor's Safety Association case by reference to the language of that decision where it was said at page 76: "If the insurance policy which was not pleaded included the agreement and the agreement otherwise conformed to the requirements of the Insurance Code, a different situation would have been presented." They contend that the instant case presents a "different situation" in that the oral agreement was to have been included in the policy as pleaded, and that said oral agreement "otherwise conformed to the requirements of the Insurance Code."

We may assume, without deciding, that even in the field of workmen's compensation insurance, the presumption that the parties' entire agreement is embodied in the policy as written (Ins. Code, § 751; rule III, Manual of Rules, Classifications and Basic Rates for Workmen's Compensation Insurance, promulgated March 1, 1950; *Contractor's Safety Assn.* v. *California Comp. Ins. Co., supra,* 48 Cal.2d 71, 75) would not preclude the reformation of the policy where "through fraud of one and mistake of the other, or mutual mistake . . . it does not embody therein the actual contract intended, or fully set forth the same." (6 Couch, Cyclopedia of Insurance Law, § 1391, p. 4982.) It seems clear, however, that reformation cannot be permitted where it would result in an illegal agreement.

Plaintiffs no doubt realize the dilemma, for they do not seek to reform the policy by the elimination of the "Participation Endorsement" found therein and the substitution in its place of the alleged oral agreement. This is understandable as the oral agreement, standing alone, is clearly violative of the minimum rating law. It purports to be a contractual obligation, entered into in advance, for a return premium based upon a fixed formula which embodies only the factors of (1) loss experience of the named assured and (2) an agreed fixed percentage of the premium for administration fees. Such a fixed formula wholly ignores the overall loss experience of the insurer as well as the actual percentage of the overall administrative costs during the policy year. In our opinion, any such fixed formula agreement provides for an illegal rebate rather than for a permissible participating dividend. As this court said in the Contractor's Safety Association case at page 74: "Where a dividend agreement is not one to share profits the dividend cannot be said to be 'participating' within the meaning of section 763 (Insurance Code)." Furthermore, it seems entirely clear that to permit the parties to enter into such a fixed formula agreement in advance would inevitably sanction the return to the "irresponsible premium policies" between competing insurers which the minimum rating law was designed to prevent. (*Contractor's Safety Assn.* v. *California Comp. Ins. Co., supra,* 48 Cal.2d 71, 74.)

We turn now to plaintiffs' above-mentioned contentions on this appeal concerning their claimed right to recover (1)

without reformation of the policy and (2) with reformation of the policy to include both the written "Participation Endorsement" contained therein and the alleged oral agreement.

We find no merit in plaintiffs' contention that reformation was "unnecessary" and that they were entitled to recover without reformation. The policy as written provided only for such participating dividend "as may be provided in the authorized refund plan of the Company." Admittedly, plaintiffs have received a participating dividend in the sum of $2,665 and have made no showing that they were entitled to more under any "authorized" refund plan. But plaintiffs claim that so interpreted, the written policy is ambiguous and that they were entitled to "interpretation and explanation of its terms" in the light of the oral agreement of the parties. It is a sufficient answer to this claim to point out that plaintiffs are here seeking, by extrinsic evidence, to vary the terms of the written policy rather than merely to interpret or explain them. While there may be some ambiguity in the participating endorsement provisions of the policy as written, it seems entirely clear that any participating dividend would be payable thereunder only out of "surplus" derived from the overall experience of the insurer on workmen's compensation policies during the policy year "after adequate provision has been made for all losses, loss expenses, reserves, taxes and other charges," and then only "as may be provided in the authorized refund plan of the Company." Plaintiffs' reliance upon the oral agreement providing for a fixed formula return dependent only upon the factors of (1) loss experience of the named assured and (2) a fixed percentage of the premium as administration fees, and without regard to any "authorized refund plan of the Company," would necessarily constitute a variance of the terms of the written agreement, which cannot be permitted under the guise of interpretation. (18 Cal.Jur. 2d, Evidence, § 255, p. 737.)

Having concluded that plaintiffs could not recover without reformation of the written policy, we are further of the opinion that the trial court correctly determined that plaintiffs could not recover upon the policy, in the event of reformation, because of illegality. In this connection, we need not repeat our discussion of the illegality of the oral agreement standing alone, nor of the impossibility of carrying the oral agreement into the written policy without injecting

a hopeless conflict into the combined provisions of the reformed policy. It is sufficient here to point out that plaintiffs are here seeking to recover upon a reformed policy containing a reformed participating endorsement which has never been authorized by the Insurance Commissioner, and which does violence to the provisions of the minimum rating law.

The Legislature has manifested its concern about compensation policies by providing that "A workmen's compensation policy shall not be issued by any insurer unless it is previously approved, as to substance and form, by the commissioner." (Ins. Code, § 11658.) Plaintiffs make no claim that a policy of the type of the reformed policy has ever been approved by the commissioner. On the contrary, it appears as early as 1934, Circular Number 307, issued by the California Inspection Rating Bureau, advised all workmen's compensation insurers that no such policy would be approved which "by either its original terms, or any endorsement, amendment, letter or otherwise: . . . (2) Agrees upon a specified overhead expense for the purpose of dividend computation; . . . " It is therefore impossible to sustain plaintiffs' claim that "The plan involved here followed exactly the provisions specified in Section 11738 as included in the Rating Bureau's circular number 307 . . . ," for plaintiffs are obviously seeking to enforce an agreement containing "a specified overhead expense for the purpose of dividend computation."

Plaintiffs' reference to *State Comp. Ins. Fund* v. *McConnell*, 46 Cal.2d 330 [294 P.2d 440], is not helpful. That case involved the legality of an order of the Insurance Commissioner fixing minimum rates in a certain manner and had no reference to the legality of a fixed formula agreement between the parties for the return of a portion of the minimum rates.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.

Appellants' petition for a rehearing was denied November 25, 1959.