[Civ. No. 19262. Fourth Dist., Div. Two. June 21, 1978.]

HOMESTEAD SUPPLIES, INC., Plaintiff and Appellant, v.
EXECUTIVE LIFE INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Dill & Showler and Fred H. Dill for Plaintiff and Appellant.

Barger & Wolen and Stephen C. Klein for Defendant and Respondent.

**OPINION**

**KAUFMAN, J.**—Homestead Supplies, Inc. (hereafter plaintiff) commenced this action to obtain a declaration of the correct amount of the annual premium payment due under a policy of life insurance issued to plaintiff by Executive Life Insurance Co., (hereafter defendant) on the life of plaintiff's president. Trial was to the court without jury. Judgment was for defendant. Plaintiff appeals.

*Facts*

The essential facts are undisputed. Defendant's agent and plaintiff's president had been discussing plaintiff's purchasing from defendant a seven-year renewable and convertible term life insurance policy insuring the life of plaintiff's president. The policy would cover an initial term of seven years and be renewable by plaintiff for additional periods of seven years without proof of insurability.

Defendant's agent presented the plaintiff's president a written proposal for issuance of such a policy at the following specified premiums:

premium for the first year $7,515; premium for each of the next six years $4,515; premium for each of the next seven years $7,485. Plaintiff's president pointed out to defendant's agent that the premiums specified in the proposal were greater than those previously quoted, and defendant's agent indicated the policy could be issued for the lower premiums originally quoted. The previously quoted premiums were penciled in on the written proposal as follows: premium for the first year $7,230; premium for each of the next six years $4,230; premium for each of the next seven years $6,840. At a special meeting of its board of directors, plaintiff authorized purchase of the policy on the basis of the lower penciled-in premiums. Plaintiff's president executed the required application and delivered to defendant's agent plaintiff's check for the first year premium in the amount of $7,230.

Several months later when the policy had been issued and arrived, plaintiff's president discovered that while the premiums for the first year and each of the next six years were at the lower figures penciled in on the written proposal from defendant's agent, the renewal premiums for each of the succeeding seven years calculated in accordance with the policy's table of renewal premiums was $7,485, the amount specified in the original written proposal rather than $6,840 as subsequently penciled in.

Plaintiff's president directed a letter to defendant's agent pointing out the discrepancy but received no response. Plaintiff's president then directed a letter to defendant addressed to the attention of defendant's president explaining the situation and requesting some action. In response, plaintiff received a letter from defendant's president dated April 28, 1970, which read in pertinent part: "I am very sorry that Mr. Sampson [defendant's agent] mistakenly quoted a rate one year younger than you really would be seven years from now. [1] [¶] Mistakes are possible, naturally. However, since your Board approved the premiums, we will stand behind our agent and accept, during the renewal years, the amount of $6,840."

---

[1]The policy was issued as of June 23, 1969, when plaintiff's president was 54 years old. The premiums quoted by defendant's agent and penciled in on the written proposal for the first year and each of the next six years were correct for an insured aged 54. However, the premium quoted by defendant's agent for the renewal period was apparently based on the mistaken notion plaintiff's president would be 60 years old at the date of renewal. In fact, his age would then be 61, and the $7,485 premium specified in the written proposal was correct as to the renewal period.

Having received this letter from defendant's president, plaintiff retained the policy and duly paid the premiums specified in the policy for each of the next six years. On June 11, 1976, defendant directed a letter to plaintiff enclosing a renewal premium notice and indicating the amount of the annual renewal premium due was $7,485. Plaintiff tendered payment of $6,840. Defendant demanded the full $7,485. When plaintiff refused to pay that amount, defendant sent plaintiff notice the policy had lapsed. Plaintiff then paid the full $7,485 under protest, whereupon the policy was reinstated. Shortly thereafter plaintiff commenced this action seeking a declaration that the annual premium during the first renewal term is $6,840.

As previously indicated, the court rendered judgment in favor of defendant, in effect adjudging the premium is $7,485.

### Scope of Review

Findings of fact were not requested and, thus, were waived. (Code Civ. Proc., § 632.) Accordingly, we must presume in favor of the judgment every finding of fact necessary to support it warranted by the evidence. (*Gray* v. *Gray,* 185 Cal. 598, 599 [197 P. 945]; *Philbrick* v. *Huff,* 60 Cal.App.3d 633, 650 [131 Cal.Rptr. 733].) Additionally, defendant asserts the substantial evidence rule. However, with respect to the essential facts, the evidence is not in conflict nor does it give rise to pertinent conflicting inferences. Under these circumstances, the questions presented are questions of law. (Cf. *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization,* 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249], and cases there cited; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 255, 256, p. 4247.)

### Contentions and Discussion

Defendant's contentions in support of the judgment are two: (1) the correspondence between the parties after issuance of the policy constitutes an attempted modification of a written agreement that is unenforceable for lack of consideration; and (2) the purported modification is unenforceable because it would constitute a premium rebate in violation of Insurance Code sections 750, 751, 752 and 761 and a rate discrimination in violation of Insurance Code sections 790.02 and 790.03, subdivision (f). We conclude the modification agreement is not unenforceable for lack of consideration and though it may be technically in violation of

one or more of the Insurance Code sections cited, the illegality is not such as to render the agreement unenforceable in the particular circumstances here shown.

*Modification—Consideration*

The parties are in basic disagreement as to exactly when the contract of insurance was effected. Plaintiff contends the contract came into being when its president and defendant's agent agreed upon the premium figures and plaintiff's check for the first year's premium was delivered to defendant's agent. Under plaintiff's analysis, the policy failed to conform to the parties' agreement and the subsequent correspondence merely acknowledged and corrected the mistake and, thus, required no new consideration. (See *Texas Company* v. *Todd,* 19 Cal.App.2d 174, 185-186 [64 P.2d 1180]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 715, p. 601.) Defendant contends the policy constituted the entire contract between the parties (Ins. Code, § 10113), and the subsequent correspondence constituted a purported modification of the written contract necessitating new consideration. (Civ. Code, § 1698; *Main St. etc. Co.* v. *L.A. Trac. Co.,* 129 Cal. 301, 305 [61 P. 937]; *Krobitzsch* v. *Middleton,* 72 Cal.App.2d 804, 808 [165 P.2d 729].) Since we must indulge presumptions supporting the judgment and in view of the waiver of findings of fact and conclusions of law and the absence of evidence concerning the authority of defendant's agent, we accept as correct for purposes of this decision defendant's contention that no contract of insurance was effected prior to issuance of the policy. ■ We conclude, however, the subsequent agreement of the parties that the renewal premium would be $6,840 (hereafter the modification agreement) was supported by consideration or a legal substitute therefor.

It is indisputable defendant's agent misquoted the amount of the renewal premium to plaintiff's president and plaintiff never agreed to pay $7,485 as the annual renewal premium. Thus, when plaintiff received the policy and discovered the discrepancy, it was under no legal obligation to accept or retain the policy; it undoubtedly had the legal right to return the policy and demand repayment of the first year's premium. (Cf. Civ. Code, §§ 1689, subd. (b)(1), 1692.) Having received the letter from defendant's president promising to accept $6,840 as the annual renewal premium, plaintiff refrained from exercising these legal rights, retained the policy and thereafter paid the specified premium for each of the next six years. This conduct on the part of plaintiff, if bargained for,

constituted consideration (Civ. Code, § 1605; *Raedeke* v. *Gibraltar Sav. & Loan Assn.,* 10 Cal.3d 665, 673-674 [111 Cal.Rptr. 693, 517 P.2d 1157]; see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 152, 157, pp. 146, 150-151); if not bargained for by defendant, plaintiff's conduct constituted a reasonably expectable and substantial change of position in reliance on the promise sufficient to invoke the doctrine of promissory estoppel, which is a legal substitute for consideration. (*Youngman* v. *Nevada Irrigation Dist.,* 70 Cal.2d 240, 249 [74 Cal.Rptr. 398, 449 P.2d 462]; see Rest., Contracts, § 90; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 189, p. 174.)

*Illegality—Enforceability*

Insurance Code section 750[2] reads: "An insurer, insurance agent, broker, or solicitor, personally or by any other party, shall not offer or pay, directly or indirectly, as an inducement to insurance on any subject-matter in this State, any rebate of the whole or part of the premium payable on an insurance contract . . . ." Section 751 prohibits the same persons from offering to pay as an inducement to enter into an insurance contract any valuable consideration which is not clearly specified or provided for in the policy. Section 761 makes it a misdemeanor for any such person to make an unlawful rebate. Section 752 makes it a misdemeanor for an insured *knowingly* to accept or receive any unlawful rebate.

Sections 790.02 and 790.03, subdivision (f), prohibit an insurer from "[m]aking or permitting any *unfair* discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance . . . ." (Italics added.)

We are not entirely convinced that either the unlawful rebate or unfair rate discrimination provisions were meant to apply to a situation such as that in the case at bench, namely, an apparently good faith mistake in the quotation of premiums by an agent of the insurer[3] followed by an apparently good faith agreement of the insurer to stand behind the representations of its agent. On the other hand, as the president of a life insurance company, defendant's president should certainly have been

---

[2]All statutory references hereafter refer to the Insurance Code unless otherwise indicated.

[3]Actually, the agent was correct and the written proposal was mistaken as to two out of three of the premiums quoted.

aware of the statutes prohibiting rate discrimination and rebate of premiums. ██ In any event, for purposes of decision, we shall assume, without deciding, the modification agreement was violative of both the rebate and price discrimination statutory provisions.[4]

In support of its contention the modification agreement is unenforceable because it constitutes an unlawful rebate and an illegal rate discrimination, defendant cites *R. D. Reeder Lathing Co.* v. *Cypress Ins. Co.,* 3 Cal.App.3d 995 [84 Cal.Rptr. 98]. Actually, the holding in that case was that, notwithstanding the illegality of the defendant's agreement to rebate part of the plaintiff's workers' compensation insurance premium, the plaintiff could recover damages in fraud resulting from its reliance on the defendant's misrepresentation it could lawfully make such rebates. (*Id.,* at pp. 999-1000.) The decision does imply that an action on the agreement would not lie because of its illegality. (*Id.*) Underlying the implication is the court's citation of *Key System Transit Lines* v. *Pacific Employers Ins. Co.,* 52 Cal.2d 800 [345 P.2d 257], and *Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co.,* 48 Cal.2d 71 [307 P.2d 626]. (*Id.,* at pp. 998-999.) Although defendant does not cite these cases, we feel compelled to discuss them because of its citation of *Reeder.*

Like *Reeder,* both cited cases involved policies of workers' compensation insurance. In *Contractor's* the plaintiff sued on the policy seeking to recover the difference between what it would have received had the defendant performed its agreement and the amount it did receive. In *Key System* the plaintiff sought to reform the policy in accordance with representations of the insurer and enforce the policy as reformed. In each case, the plaintiff was denied recovery on the ground of illegality. Although part of the illegality found in each case was an unlawful rebate, these decisions do not govern the enforceability of the agreement in the case at bench.

---

[4]Plaintiff is correct in asserting that, on the present record, the evidence is insufficient to demonstrate any discrimination in rates between individuals of the same class and equal expectation of life. Defendant did not plead illegality as a defense and failed to present any evidence that the table of renewal premiums included in the policy was the prevailing rate schedule utilized by it in all policies of the type issued to plaintiff or of the period during which the rate schedule was in effect. More importantly, there was no evidence that defendant ever issued an identical policy of insurance to another person in the same class having the same life expectancy as plaintiff's president. However, the insufficiency in the evidence goes only to the asserted illegality of price discrimination, not that of unlawful rebate, and, in any event, in view of our conclusion the modification agreement is not rendered unenforceable by its assumed illegality, it would be improvident to reverse for insufficiency of the evidence which would necessitate a new trial.

There are fundamental differences between policies of workers' compensation insurance such as were involved in the cited cases and the policy of renewable term life insurance involved in the case at bench. Competitive conditions in the insurance industry had led to such irresponsible premium policies in connection with workers' compensation insurance that the Legislature enacted a minimum rating law by which workers' compensation insurance carriers are forbidden to issue insurance at rates less than those approved by the insurance commissioner. (*Key System Transit Lines* v. *Pacific Employers Ins. Co., supra,* 52 Cal.2d at p. 804; *Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co., supra,* 48 Cal.2d at pp. 74-75; §§ 11730-11742.) In each of the cited cases, the court held the agreement sought to be enforced would violate the minimum rate law, and that illegality was at least as significant in the decisions as the violation of section 751. (See *Key System Transit Lines* v. *Pacific Employers Ins. Co., supra,* 52 Cal.2d at pp. 804-805; *Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co., supra,* 48 Cal.2d at pp. 74-76.) As the court said in *Key System*: "[I]t seems entirely clear that to permit the parties to enter into such a fixed formula agreement in advance would inevitably sanction the return to the 'irresponsible premium policies' between competing insurers which the minimum rating law was designed to prevent. (*Contractor's Safety Assn.* v. *California Comp. Ins. Co., supra,* 48 Cal.2d 71, 74.)" (*Key System Transit Lines* v. *Pacific Employers Ins. Co., supra,* 52 Cal.2d at p. 805; see also *Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co., supra,* 48 Cal.2d at pp. 74-75.) In addition, both the form and substance of workers' compensation insurance policies must be approved in advance by the commissioner (§ 11658), and in *Key System* the reformation sought would have resulted in the insertion into the policy of a provision expressly disapproved. (52 Cal.2d at p. 807.)

Another fundamental difference between policies of workers' compensation insurance and the policy of renewable term life insurance involved in the case at bench lies in the continuing nature of a life insurance policy as contrasted to a policy of workers' compensation insurance. Customarily, policies of workers' compensation insurance expire periodically, usually annually. Upon expiration, the insured may renew the policy with the same carrier or obtain a policy from a different carrier. There is no necessary continuing relationship and each policy period constitutes a separate period of coverage. Life insurance on the other hand is issued normally on a long-term basis and continuity of coverage is vital because of the necessity of demonstrating insurability should coverage be terminated and new coverage sought. In the case at bench, the parties are

not in the same position they were when the policy was issued in 1969. Not only has plaintiff paid the annual premiums, but plaintiff's president who was then 54 years old is now aged 63. ■ As we shall see, the effect of illegality on the enforceability of an agreement depends on the facts and circumstances of the particular case including the kind and degree of illegality involved, the public policy or policies to be served, whether those public policies will best be served by enforcing the agreement or denying enforcement and the relative culpability and equities of the parties.

In *Contractor's,* quoting from *Severance* v. *Knight-Counihan Co.,* 29 Cal.2d 561, 568 [177 P.2d 4, 172 A.L.R. 1107], the court stated the general rule denying enforcement of illegal contracts: " ' "The general rule controlling in cases of this character is that where a statute prohibits or attaches a penalty to the doing of an act, the act is void, and this, notwithstanding that the statute does not expressly pronounce it so, and it is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum* . . . . The imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and a contract founded upon such act is void." ' " (48 Cal.2d at p. 76.) Whether or not the court actually meant to indicate the contract of insurance in that case was void, we are not required to determine. The illegality involved and the relative equities of the parties in that case are different from those in the case at bench. ■ However, in the great majority of jurisdictions, the fact that an insurance contract is illegal because it provides for an unlawful rebate or constitutes an unlawful discrimination in rates is not held to void the insurance contract. "The fact that an antirebate statute has been violated does not vitiate the contract of insurance, nor entitle the insurer to obtain a reformation of the contract. In the absence of a legislative expression of intent to the contrary, an insurer cannot—at least, as against an innocent insured who is not in pari delicto—accept and retain benefits, and then plead as a defense its own violation of a statute prohibiting the granting of discriminations as to rates, as by setting up that such contract is void for discrimination. . . . In other words, the insurer cannot say that the contract of insurance is void because of a violation of an antirebate statute for the purpose of defeating the insured, and thus take advantage of its own wrong." (5 Couch, Cyclopedia of Insurance Law (2d ed. 1960) § 30:64, pp. 583-584 [fns. omitted]; *Hyde Ins. Agency, Inc.* v. *Dixie Leasing Corp.* (1975) 26 N.C.App. 138 [215 S.E.2d 162, 165].)

These rules applied to illegal insurance contracts are but a specific example of the now commonly accepted approach to the question of enforceability of illegal contracts exemplified in the opinion authored for the majority by then Associate Justice Traynor in *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 150-151 [308 P.2d 713]: "[T]he courts generally will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit, he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct . . . . [¶] In some cases, on the other hand, . . . effective deterrence is best realized by enforcing the· plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. [Citations.]" (Accord: e.g., *South Tahoe Gas Co.* v. *Hofmann Land Improvement Co.,* 25 Cal.App.3d 750, 759 [102 Cal.Rptr. 286]; *Southfield* v. *Barrett,* 13 Cal.App.3d 290, 294 [91 Cal.Rptr. 514]; *Emmons, Williams, Mires & Leech* v. *State Bar,* 6 Cal.App.3d 565, 569-570 [86 Cal.Rptr. 367]; see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 362, p. 304.)

One of the authorities cited in *Lewis & Queen* is Professor Corbin. In his treatise on contracts he states: "There are many varieties and degrees of 'illegality.' These varieties and degrees must be taken into account in determining the juristic effect of a transaction that involves some form of illegality. It is far from correct to say that an illegal bargain is necessarily 'void,' or that the law will grant no remedy and will always leave the parties to such a bargain where it finds them. Such general statements are indeed found in great number, faithfully reprinted in long columns of digest paragraphs; they render only a wearisome disservice when repeated with no reference to the facts of the cases in which they have been made. Before granting or refusing a remedy, the courts have always considered the degree by the offense, the extent of public harm that may be involved, and the moral quality of the conduct of the parties in the light of the prevailing mores and standards of the community." (6A Corbin on Contracts (1962) § 1534, p. 816.)

■ Among the specific factors frequently considered by courts are whether the violation of law involved serious moral turpitude, whether

the parties are not entirely *in pari delicto,* whether the adverse party would be unjustly enriched if enforcement were denied, whether the forfeiture resulting from denial of enforcement would be disproportionately harsh in proportion to the illegality (see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 362, p. 304) and whether the purpose of the statute violated will best be served by enforcement or denial of enforcement (*Robertson* v. *Hyde,* 58 Cal.App.2d 667, 672 [137 P.2d 703]).

We consider first the violation of section 750 et seq., proscribing a rebate of premium. With respect to that illegality, the parties are not *in pari delicto.* Defendant's president, as president of a life insurance company, either knew or should have known of the potential illegality in defendant's agreeing to accept a renewal premium less than that prescribed in the rate table. By contrast, there is no evidence indicating plaintiff's president either knew or should have known of the illegality. In this connection we observe that while an insurer or representative of an insurer is guilty of a misdemeanor for merely making or receiving an unlawful rebate (§ 761), an insured is guilty of a misdemeanor only if he *knowingly* accepts or receives an unlawful rebate (§ 752). Neither does it appear the illegality involves any serious moral turpitude. Insofar as plaintiff is concerned, all that was involved was the correction of an error. Defendant's conduct appears to have been motivated by a desire to stand behind and make good on the word of its agent which, except for the illegality, is hardly blameworthy.

Finally, to deny plaintiff relief in this action would permit defendant to benefit from the illegality thus disserving deterrence. Since we are assuming the modification agreement violates section 750 it must be assumed the agreement was made by defendant "as an inducement to insurance." (§ 750.) Plaintiff has relied on the agreement by retaining the policy and paying the annual premiums for a number of years and the insured, who was 54 years old when the policy was issued and 55 years old when the modification agreement was made, is now aged 63. Plaintiff is not attempting to rescind the contract of insurance. The contract is going to be enforced one way or the other, either on plaintiff's terms or defendant's terms. If it is enforced on defendant's terms, defendant will have been permitted to reap not only the benefit of its illegal inducement to insurance but, also, a bonus—the difference between the premium agreed to and that now declared required by law. Such a result could only encourage similar illegal inducement in the future. As previously noted, violation of section 750 is a misdemeanor. (§§ 752, 761.) It also

constitutes grounds for disciplinary action against a licensee. (§ 766.) Further, a knowing violation of the rebate laws by an insurer or knowingly permitting its agent to violate the rebate laws is grounds for suspension of the insurer's certificate of authority. (§ 765.) Under the circumstances here disclosed, the statutory purpose will best be served by enforcing the modification agreement. Sufficient deterrence is provided by the criminal and administrative sanctions. (Cf. *South Tahoe Gas Co.* v. *Hofmann Land Improvement Co., supra,* 25 Cal.App.3d at p. 759.)

The foregoing discussion and conclusion are equally applicable to the assumed violation of sections 790.02 and 790.03, subdivision (f), proscribing unfair discrimination. There is, however, another factor worthy of mention pertinent to illegality under sections 790.02 and 790.03. These sections define and prohibit insurers from engaging in unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. They are directed at insurers, not insureds. Indeed, the nature of the conduct proscribed indicates clearly that at least one of the statutory purposes is protection of the public. (See § 790.03.) In fact, it has been held that section 790.09 contemplates civil liability to members of the consuming public injured by an insurer's violation of sections 790.02 and 790.03. (See *Shernoff* v. *Superior Court,* 44 Cal.App.3d 406, 409-410 [118 Cal.Rptr. 680]; *Greenberg* v. *Equitable Life Assur. Society,* 34 Cal.App.3d 994, 1000-1001 [110 Cal.Rptr. 470].) Significantly, these sections do not proscribe any conduct on the part of the insured and while administrative remedies and penalties are provided for an insurer's making an unfair discrimination in rates (§§ 790.04-790.08), no penalty or other sanction is imposed for the purchase or acceptance of a policy the premium for which constitutes an unfair rate discrimination.

■ "[W]hen the Legislature enacts a statute forbidding certain conduct for the purpose of protecting one class of persons from the activities of another, a member of the protected class may maintain an action notwithstanding the fact that he has shared in the illegal transaction. The protective purpose of the legislation is realized by allowing the plaintiff to maintain his action against a defendant within the class primarily to be deterred." (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at p. 153, and cases there cited; see 6A Corbin on Contracts (1962) § 1540, pp. 833-836; Rest., Contracts, § 601.)

■ Even if plaintiff's participation in the modification agreement somehow removes it from the class of persons meant to be protected by

sections 790.02 and 790.03, its enforcement of the modification agreement is not thereby precluded. ■ "The prohibition against discrimination in rates . . . is directed to insurers, agents, brokers and other representatives of insurers . . . . The sanctions provided by statutes for violations of the antirebate provisions are directed to the insurers, agents, brokers or other representatives. The statutes do not declare that contracts in violation of the antirebate provisions are void. [Citations.] [¶] '. . . In the absence of a legislative expression of intent to the contrary, an insurer cannot—at least, as against an innocent insured who is not in pari delicto—accept and retain benefits, and then plead as a defense its own violation of a statute prohibiting the granting of discriminations as to rates . . . .' " (*Hyde Ins. Agency, Inc.* v. *Dixie Leasing Corp., supra,* 215 S.E.2d at p. 165.)

### Disposition

The judgment is reversed with directions to the trial court to enter judgment in favor of plaintiff declaring the annual renewal premium to be $6,840.

Tamura, Acting P. J., and McDaniel, J., concurred.