KUEBLER v EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

Docket No. 167729. Submitted October 11, 1995, at Detroit. Decided September 17, 1996, at 9:20 A.M.

Henry E. Kuebler and Randall G. Garcia brought an action in the Lapeer Circuit Court against Equitable Life Assurance Society of the United States and Michael Ayotte, an Equitable agent, seeking reformation of contracts of whole life insurance to provide for vanishing premiums instead of premiums payable for life. The plaintiffs claimed fraud and mistake, asserting that they relied on oral and written representations by Ayotte that the policies provided for vanishing premiums. The plaintiffs filed a motion to amend their complaint to additionally allege promissory estoppel and innocent misrepresentation. The defendants moved for summary disposition, arguing that the claims against Ayotte are barred by the two-year statute of limitations for professional malpractice, that reformation is barred by the antidiscrimination statute, MCL 500.2019; MSA 14.12019, and that the fraud claim against Equitable was precluded by language in the applications and the policies that no agent has authority to modify the insurance contracts or waive Equitable's rights or requirements. The court, Nick O. Holowka, J., without ruling with regard to the plaintiffs' motion to amend their complaint, granted summary disposition for the defendants. The plaintiffs appealed.

The Court of Appeals held:

1. The trial court in dismissing the fraud claim against Ayotte on the basis of the two-year statute of limitations for professional malpractice erred so as to require reversal and a remand. When, as in this case, a complaint alleges all the necessary elements of fraud as well as malpractice, the statute of limitations governing fraud actions applies to the fraud count. The six-year period of limitation for fraud actions, MCL 600.5813; MSA 27A.5813, applies to the plaintiffs' fraud claim. On remand, the trial court must permit the plaintiffs to amend their complaint.

2. The trial court erred in dismissing the fraud claim against Equitable on the basis of language in the applications and the policies that limited Ayotte's authority as Equitable's agent. An insur-

ance contract can be reformed on the basis of an insurance agent's fraud. A principal may be charged with fraud committed by its agent in the course of employment, even though the principal was ignorant of the fraud and the agent exceeded authority or acted in violation of the principal's instructions.

3. Reformation of the insurance contracts is not barred by the fact that violations of the antidiscrimination statute, MCL 500.2019; MSA 24.12019, which bars price discrimination based on considerations other than risk and expenses, would result from the proposed reformation. As against an innocent insured who is not in pari delicto, an insurer should not be able to take advantage of its own wrong by pleading the antidiscrimination statute to argue against reformation.

Reversed and remanded.

O'CONNELL, J., concurring in part and dissenting in part, agreed with the majority that the statute of limitations governing fraud actions applies to the fraud claim against Ayotte, but stated that reformation of the insurance contracts is barred by the antidiscrimination statute.

1. LIMITATION OF ACTIONS — FRAUD — PROFESSIONAL MALPRACTICE.

When a complaint alleges all the necessary elements of fraud as well as malpractice, the statute of limitations governing fraud actions applies to the fraud count (MCL 600.5813; MSA 27A.5813).

2. AGENCY — FRAUD.

A principal is chargeable with the fraud of an agent committed upon a third party in the course of employment, even though the principal was ignorant of the fraud and the agent exceeded authority or acted in violation of the principal's instructions.

3. INSURANCE — LIFE INSURANCE CONTRACTS — REFORMATION — UNIFORM TRADE PRACTICES ACT — PRICE DISCRIMINATION.

Reformation of a contract of life insurance on the basis of fraud by the insurer that would result in a premium that violates the statute that prohibits price discrimination based on considerations other than risk and expenses is not automatically barred by the statute (MCL 500.2019; MSA 24.12019).

*Hackett & Maxwell, P.C.* (by *Phillip B. Maxwell*), for Henry E. Kuebler and Randall G. Garcia.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Gilbert E. Gove* and *Ellen M. Tickner*), for Equitable Life Assurance Society of the United States.

*MacAloon & Feldman* (by *Barry M. Feldman*), for Michael Ayotte.

Before: MICHAEL J. KELLY, P.J., and O'CONNELL and J. R. GIDDINGS,* JJ.

J. R. GIDDINGS, J. Plaintiffs appeal as of right the August 11, 1993, grant of defendants' joint motion for summary disposition in this insurance contract case. Plaintiffs had purchased whole life insurance policies mistakenly believing that the premiums would be fully paid in three years when in fact the policies were not vanishing premium policies, because the premiums would continue to be due for life. Plaintiffs contended their misunderstanding was caused by the misrepresentations of defendant Michael Ayotte, an agent for defendant Equitable Life Assurance Society of the United States.

On May 21, 1983, plaintiffs, who were business partners, applied for whole life insurance policies from defendant Equitable through agent Ayotte. Before and after the application was made, Ayotte made oral and written representations to plaintiffs that the policy premiums would be fully paid after three years. Equitable issued Garcia's policy on June 3, 1985, and issued Kuebler's policy on July 26, 1985. Each policy jacket stated "Premiums payable for life." Plaintiff Garcia called Ayotte to question him about this language, and Ayotte allegedly assured him that this did not conflict with what had been explained.

The policy included a ten-day "free look" that allowed the applicant to review the policy and return it for a full refund. Neither plaintiff rejected the pol-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

icy, and both paid premiums for the following three years. When Equitable continued to bill plaintiffs after three years, plaintiffs contacted Ayotte, who asked for and collected the policies on May 23, 1988. Ayotte was to confer with Equitable. He finally returned the policies in 1991.

On April 5, 1991, plaintiffs filed a complaint alleging fraud and an alternative count alleging mistake. With regard to both counts, plaintiffs requested reformation of the insurance policies to conform to the premium period Ayotte had represented. On May 21, 1993, plaintiffs filed a motion seeking leave to amend their complaint. Plaintiffs sought to add counts of promissory estoppel and innocent misrepresentation and requested damages on the innocent misrepresentation count.

On June 3, 1993, defendants filed a joint motion for summary disposition under MCR 2.116(C)(7), (8), and (10). The trial court heard arguments on both motions on July 19, 1993. On the C(7) statute of limitations question, the trial court ruled in defendants' favor, finding that Ayotte, as a licensed insurance agent, fell within the special statute of limitations for professional malpractice. Regarding the C(8) motion, the court ruled that the insurance antidiscrimination statute prevented reformation of the contract. With regard to the C(10) motion, which addressed the question of Ayotte's alleged fraud as Equitable's representative, the trial court found that the policy language informed plaintiffs that Ayotte could not alter the policy and that the policy itself adequately informed them of its terms. The court did not rule on the motion to amend.

I

Plaintiffs claim that the trial court erred in ruling that the two-year professional malpractice statute of limitations barred plaintiffs' claims. Plaintiffs say Ayotte was not a professional within the meaning of the statute, the claims were for fraud, not malpractice, and in any event the claims did not accrue until May of 1991 when the policies were returned by Ayotte and when Ayotte stopped rendering services to plaintiffs.

Defendants respond that insurance agents must be licensed by the state, must pass an examination to be licensed, and must fulfill continuing education requirements set by the state. They therefore assert that such agents are state-licensed professionals and fall within the statute of limitations governing claims for licensed professionals.

When this Court reviews a motion for summary disposition under MCR 2.116(C)(7), it accepts the allegations in a well-pleaded complaint as true and construes them in the plaintiff's favor. *Kassab v Michigan Basic Property Ins Ass'n*, 185 Mich App 206, 210; 460 NW2d 300 (1990). This Court reviews questions of law de novo. *In re Lafayette Towers*, 200 Mich App 269, 273; 503 NW2d 740 (1993). Chapter 58 of the Revised Judicature Act, MCL 600.5801 *et seq.*; MSA 27A.5801 *et seq.*, governs the times for pursuing various causes of action. The burden of establishing the bar imposed by a statute of limitations is normally on the party asserting the defense. *Blaha v A H Robins & Co*, 536 F Supp 344, 345 (WD Mich, 1982), aff'd 708 F2d 238 (CA 6, 1983).

Generally, two years is the limit for malpractice actions. MCL 600.5805(4); MSA 27A.5805(4). Alterna-

tives include MCL 600.5805(8); MSA 27A.5805(8), which provides a three-year period to "recover damages . . . for injury to a person or property," MCL 600.5807(8); MSA 27A.5807(8), which provides a six-year limitation period for breach of contract, and MCL 600.5813; MSA 27A.5813, which provides a six-year period for all personal actions not otherwise provided for in the statutes. Plaintiffs argue that the last six-year limitation should have been applied because the gravamen of their complaint was an action for fraud. See *Kwasny v Driessen*, 42 Mich App 442, 446; 202 NW2d 443 (1972).

When a complaint alleges all the necessary elements of fraud as well as malpractice, the statute of limitations governing fraud actions will apply to the fraud count. *Brownell v Garber*, 199 Mich App 519, 533; 503 NW2d 81 (1993). The elements of fraud include:

> "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." [*Id.*, quoting *Scott v Harper Recreation, Inc*, 192 Mich App 137, 144; 480 NW2d 270 (1991).]

Plaintiffs specifically pleaded each of these elements in their complaint. Therefore, a six-year statute of limitations applied to plaintiffs' fraud count, and the trial court's dismissal under MCR 2.116(C)(7) was error. Given that the statute of limitations for fraud controls, there is no need to address whether an insurance agent is a "professional" within the meaning of the statute.

Plaintiffs sought to have the trial court consider their motion to amend the complaint. The trial court never directly ruled with regard to the motion, but it implicitly denied the motion by granting the defendants' summary disposition motion as the final order in the case. Because we reverse the court's grant of summary disposition, we direct on remand that the trial court permit the plaintiffs to amend their complaint. MCR 2.118(A)(2); *Taylor v Detroit*, 182 Mich App 583, 586; 452 NW2d 826 (1989). See also MCL 600.2301; MSA 27A.2301.

II

The trial court also erred in granting defendant Equitable's motion for summary disposition brought under MCR 2.116(C)(10) with respect to the fraud count. The trial court found that the fraud claim was precluded by the general policy provision as well as the following language in the policy applications: "No agent . . . has authority to modify this Agreement or the Temporary Insurance Agreement, nor to waive any of The Equitable's rights or requirements." That conclusion was in error.

Two of the cases relied on by Equitable and cited by the trial court do not support this position. One, *Cleaver v Traders' Ins Co*, 65 Mich 527; 32 NW 660 (1887), does not pertain because it does not involve a claim of fraud. Another case cited by the trial court, *Drogula v Federal Life Ins Co*, 248 Mich 645; 227 NW 692 (1929), is distinguishable. Unlike this case, the claimant in *Drogula* never bothered to read the insurance policy.

The question whether an insurance contract can be reformed on the basis of an insurance agent's fraud

was addressed in *Bleam v Sterling Ins Co,* 360 Mich
208; 103 NW2d 466 (1960). The Michigan Supreme
Court outlined the circumstances at page 211:

> The application for insurance, signed by plaintiff . . . con-
> tained the following:
>
> "15. Do you understand and agree that no insurance will
> be effected until a policy is issued to you? Yes.
>
> "16. Do you hereby apply to Sterling Insurance Company
> for this policy to be issued solely and entirely in reliance
> upon the written answers to the foregoing questions, which
> you agree are true and correct to the best of your knowl-
> edge and belief, and *do you agree that the company is not
> bound by any statement made by or to any agent unless
> written herein . . .? Yes.*"
>
> Plaintiff and wife admitted, on trial, that Mr. Gurwin had
> read to them the above provision in the receipt as to when
> insurance would go into effect and also quoted questions 15
> and 16 contained in the application. *They testified that
> plaintiff then questioned Mr. Gurwin in that connection,
> as to whether those provisions were not inconsistent with
> Gurwin's statement, and that the latter told them not to
> worry about that and assured them that the plaintiff was
> covered for accidents as of that time upon his payment of
> the premium and receiving the receipt.* [Emphasis added.]

The similarities between the *Bleam* case and the situ-
ation here are striking. In ordering reformation of the
insurance contract, the *Bleam* Court concluded at
page 213:

> A corporation, such as defendant, acts through its agents
> and employees. Their mistakes are the mistakes of the cor-
> poration, warranting, under circumstances such as these,
> reformation of the resulting contract. . . . If it be not a case
> of mistake but fraud on the part of the agent committed in
> the course of his employment, defendant, as his principal, is
> chargeable therewith, even though the principal was igno-

rant thereof and the agent, in so doing, exceeded his authority or acted in violation of his principal's instructions.

The limiting language in the policy and application here does not preclude reformation of the contract inasmuch as Equitable would be bound by the fraudulent representations made by its agent.

Plaintiffs are entitled to an opportunity to prove facts that would support a claim of fraud and reformation. Whether those facts are sufficient is up to the trier of fact. The trial court should not have granted Equitable's C(10) motion with respect to the fraud count.

III

Plaintiffs also claim error requiring reversal with respect to the trial court's holding that plaintiffs' reformation claim was barred by the so-called antidiscrimination statute, MCL 500.2019; MSA 24.12019. We agree.

The Michigan Insurance Code's section on unfair trade practices and frauds, known as the Uniform Trade Practices Act, MCL 500.2001 *et seq.;* MSA 24.12001 *et seq.*, contains a provision prohibiting unfair discrimination in life insurance practices. Thus, MCL 500.2019; MSA 24.12019 provides that the following constitute unfair and deceptive acts or practices:

Making or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract.

The trial court found that this statute barred reformation of the policies in this case. Whether the statutory provision bars reformation of a policy to conform to an agent's fraudulent representations in a case such as this one is a question of first impression in Michigan.

The antidiscrimination statute seeks to eliminate price discrimination based on considerations other than risk and expenses. *Katt v Ins Bureau*, 200 Mich App 648, 654; 505 NW2d 37 (1993). The overall purpose of the Uniform Trade Practices Act is to regulate insurance trade practices "by defining practices which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting such trade practices." *Bell v League Life Ins Co*, 149 Mich App 481, 483; 387 NW2d 154 (1986).

Defendants point to cases from other jurisdictions in which courts have refused to allow reformation if the reformed contract would result in violations of antidiscrimination statutes. Such an approach has the benefit of easy applicability. We opt for a more fluid approach that would take the factual circumstances of a particular case into consideration as in *Homestead Supplies, Inc v Executive Life Ins Co*, 81 Cal App 3d 978, 988-990; 147 Cal Rptr 22 (1978). The *Homestead* court addressed the question whether a contract for life insurance that arguably violated the state's antirebate and antidiscrimination statutes should nonetheless be enforced because of the insured's reliance on the insurer's representations:

> [T]he fact that an insurance contract is illegal because it provides for an unlawful rebate or constitutes an unlawful discrimination in rates is not held to void the insurance contract . . . . "In the absence of a legislative expression of

intent to the contrary, an insurer cannot—at least, as against an innocent insured who is not in pari delicto—accept and retain benefits, and then plead as a defense its own violation of a statute prohibiting the granting of discriminations as to rates, as by setting up that such contract is void for discrimination. . . . In other words, the insurer cannot say that the contract of insurance is void because of a violation of an antirebate statute for the purpose of defeating the insured, and thus take advantage of its own wrong." [*Id.* at 989, quoting 5 Couch, Cyclopedia of Insurance Law (2d ed) § 30:64, pp 583-584.]

We believe this to be the better view and therefore hold that plaintiffs' claim for reformation is not barred by the antidiscrimination statute, MCL 500.2019; MSA 24. 12019.[1]

In summary, we find that the trial court erred in finding that the malpractice statute of limitations barred plaintiffs' claims. The trial court's implicit denial of plaintiffs' motion to amend their complaint was erroneous as well. The trial court also erred in dismissing plaintiffs' claims because Ayotte's representations went beyond the scope of his authority. Finally, the anti-discrimination statute did not bar plaintiffs' claims as a matter of law.

---

[1] The *Homestead* court also referred to the public policy aspects that attend the review of "illegal" contracts:

Among the specific factors frequently considered by courts are whether the violation of law involved serious moral turpitude, whether the parties are not entirely in pari delicto, whether the adverse party would be unjustly enriched if enforcement were denied, whether the forfeiture resulting from denial of enforcement would be disproportionately harsh in proportion to the illegality . . . and whether the purpose of the statute violated will best be served by enforcement or denial of enforcement. [*Id.* at 990-991.]

Although the contract as proposed to be reformed here may technically violate the antidiscrimination statute, none of these policy considerations weigh against reformation.

Reversed and remanded.

MICHAEL J. KELLY, P.J., concurred.

O'CONNELL, J. (*concurring in part and dissenting in part*). I agree with the majority opinion that when a complaint alleges all the necessary elements of fraud as well as malpractice, the statute of limitations governing fraud actions will apply to the fraud count. *Brownell v Garber*, 199 Mich App 519, 533; 503 NW2d 81 (1993). However, I disagree with the majority's remedy of reformation of the insurance contract. The antidiscrimination statute, MCL 500.2019; MSA 24.12019, bars reformation of insurance contracts. See *Broughton v Dona*, 63 AD2d 1101; 406 NYS2d 581 (1978); *Key Systems Transit Lines v Pacific Employers Ins Co*, 52 Cal 2d 800; 345 P2d 257 (1959); *American Life Ins Co of Alabama v Aladdin Temple Benevolent Ass'n*, 238 Ala 512; 191 So 903 (1939). If plaintiffs are successful in their fraud claim, they can be adequately compensated in damages.

The majority cites one California case, *Homestead Supplies, Inc v Executive Life Ins Co*, 81 Cal App 3d 978; 147 Cal Rptr 22 (1978), for the proposition that plaintiffs' claim is not barred by the Michigan antidiscrimination statute. However, the majority misinterprets *Homestead*. In *Homestead*, the insured demanded that the court enforce the insurance policy as written. The court held that the insurer could not use the antidiscrimination clause as a shield to protect itself from its own wrongdoing. I agree this is an appropriate and equitable result. However, it does not apply to the present case.

In *Homestead,* the insured did not request reformation of an existing contract, and the courts did not allow reformation of the contract.

The majority opinion cites no statute or case law that permits a Michigan trial judge to reform insurance contracts in violation of the antidiscrimination statutes.[1] I would establish the bright-line rule that the antidiscrimination statutes prohibit reformation of insurance contracts. I would also remand and allow plaintiffs to amend their complaint.

---

[1] It would make the Insurance Commissioner's job more interesting if 617 Michigan trial judges were granted the authority to reform insurance contracts in Michigan.