RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0338p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

KENNETH WITMER; JOSEPH OLEX; RALPH W.
WILLIAMSON; EDWARD PFANNES; RAYMOND
OWENS,

            *Plaintiffs-Appellants*,

    *v.*

ACUMENT GLOBAL TECHNOLOGIES, INC.;
PLATINUM EQUITY; TEXTRON, INC.,

            *Defendants-Appellees.*

No. 11-1793

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:08-cv-12795—Patrick J. Duggan, District Judge.

Argued: July 17, 2012

Decided and Filed: September 17, 2012

Before: SUTTON and GRIFFIN, Circuit Judges; DOWD, District Judge.[*]

————————————

## COUNSEL

**ARGUED:** John R. Canzano, KLIMIST, McKNIGHT, SALE, McCLOW &
CANZANO, P.C., Southfield, Michigan, for Appellants. Donald A. Van Suilichem,
VAN SUILICHEM & ASSOCIATES, P.C., Bloomfield Hills, Michigan, for Appellees.
**ON BRIEF:** John R. Canzano, KLIMIST, McKNIGHT, SALE, McCLOW &
CANZANO, P.C., Southfield, Michigan, for Appellants. Donald A. Van Suilichem,
Kelly A. Van Suilichem, VAN SUILICHEM & ASSOCIATES, P.C., Bloomfield Hills,
Michigan, for Appellees.

    SUTTON, J., delivered the opinion of the court in which, GRIFFIN, J., joined.
DOWD, D. J. (pp. 11–12), delivered a separate dissenting opinion.

———————

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of
Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.   At stake is whether Acument Global Technologies promised lifetime, unchangeable healthcare benefits to its retired employees.  Because the company expressly reserved the right to modify or terminate benefits, we agree with the district court that no such promise was made.

I.

A collective bargaining agreement governs the relationship between Acument Global Technologies and its retired employees.  Prior to 2008, the company paid healthcare and life-insurance benefits to qualified retirees.  When Acument ended these benefits in 2008, a class of sixty-four retirees claimed that the company had violated the CBA in violation of the Employee Retirement Income Security Act and the Labor Management Relations Act.  The district court granted Acument's motion for summary judgment, and the plaintiffs appealed.

II.

Although the plaintiffs bring this claim under ERISA and the LMRA, their entitlement to health benefits is "a matter of contract."  *Reese v. CNH America, LLC*, 574 F.3d 315, 321 (6th Cir. 2009).  The contractual question is this:  Did the governing CBA create unalterable lifetime—"vested"—healthcare and life-insurance benefits?  The contractual answer is no.  The CBA reserved Acument's right to modify or terminate future benefits.

The relevant language appears in "Appendix E" to the CBA, R.98-1 at 22–24, reprinted as its own appendix to this opinion.  It starts by saying that "the Company will revise the pension plan established in 1955, hereinafter referred to as the 'Plan,' as follows."  It then contains five numbered paragraphs. The first three deal with the use of an insurance company to manage the pension fund and with the company's lack of

responsibility for the insurance company's treatment of contributions and pay outs. Paragraph four contains a reservation-of-rights clause. "The Company," it says, "reserves the right to amend, modify, suspend, or terminate the Plan." The fifth paragraph introduces the benefits provided under the Plan, saying that the "[p]rincipal provisions of the pension plan are shown below." What follows are several listed retirement benefits: retiree medical coverage; retirement income; disability income; and life insurance. In addition to describing the benefits, this section of the Appendix identifies the minimum years of service needed to obtain each benefit as well as other eligibility requirements and qualifications.

The key problem for plaintiffs is that the same document that contains the promise on which they rely ("continuous health insurance" at retirement) contains a reservation-of-rights clause ("reserv[ing] the right to amend . . . or terminate the Plan"). Their claim for benefits gets nowhere without Appendix E, and yet Appendix E broadly reserves the company's right to change the Plan benefits, using language that is incompatible with a promise to create vested, unchangeable benefits. *See Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 919 (6th Cir. 2000).

The language and structure of Appendix E show that the reservation-of-rights clause applies to all benefits listed there, not just to some of them. After describing the company's reservation of rights in paragraph four, paragraph five says that the "[p]rincipal provisions of the pension plan are shown below." Below that are provisions for "retiree medical coverage" and "continued life insurance" alongside retirement-income and disability-income provisions. What Appendix E broadly gives in the form of a wide range of retirement benefits it thus broadly reserves the right to take away or modify.

Nor is the mingling of healthcare and retirement-income provisions an unusual thing to find in a CBA. In point of fact, several of our decisions in this area rely on the tying of eligibility for and vesting of healthcare benefits to the same requirements for retirement-income benefits. *See Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 585 (6th Cir. 2006); *see also Tacket v. M&G Polymers, USA, LLC*, 561 F.3d 478, 490

(6th Cir. 2009); *Reese*, 574 F.3d at 322–23; *Noe v. PolyOne Corp.*, 520 F.3d 548, 558–59 (6th Cir. 2008); *McCoy v. Meridian Auto. Sys., Inc.,* 390 F.3d 417, 422 (6th Cir. 2004); *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 656–57 (6th Cir. 1996). "[L]anguage tying health care benefits" to retirement-income benefits, we have held, demonstrates the parties' intent to create vested healthcare benefits as well. *Yolton*, 435 F.3d at 584. If that is true, so too is the opposite: When retirement-income benefits have not vested due to a reservation of rights, "language tying health care benefits" to retirement-income benefits demonstrates that the employer did not promise lifetime, unchangeable benefits. *Id.* Just so here. To rule otherwise would alter the neutral premise of our decisions: by using tying as a relevant benchmark when it shows vesting but treating it as an irrelevant benchmark when it shows lack of vesting. That cannot be.

That particularly cannot be here. This plan not only generally ties eligibility requirements for retirement-income benefits and healthcare benefits together, but it also explicitly provides for them in the same plan and with the same reservation-of-rights clause. More than that, Appendix E provides that some funding for the two benefits may come from the same source. In providing that the company will reimburse the retiree for the monthly cost of Medicare Part B as part of the "retiree medical coverage," the plan says that the company will pay for the benefit "either directly or from the pension fund." The company and the employees thus had one more reason to provide all of these benefits under the same Appendix E umbrella: Some of the healthcare benefits could be funded by the pension fund.

The plaintiffs respond that the "pension plan established in 1955" did not originally cover retiree healthcare benefits. That is true but irrelevant. When the company and the union modified Appendix E to the CBA in the 1970s, they added healthcare benefits and did so by expanding the benefits provided under the pension plan—making healthcare benefits a "[p]rincipal provision of the pension plan." Nothing prevents the parties from defining "the Plan" however they wish and above all from changing it from time to time. That the 1955 plan has been continuously revised is borne

out by the preamble to Appendix E, which explains that "the Company will *revise* the pension plan established in 1955 . . . as follows." (Emphasis added.)

The plaintiffs also claim that the "formal pension plan documents" support their position. Br. at 27. Nothing in those documents covers retiree healthcare benefits, they point out, meaning that "the Plan" mentioned in Appendix E must not do so either. That is backwards. The "retirement income plan" documents do not define the scope of Appendix E; Appendix E defines the scope of the relevant plan documents and how and when they can be modified. Because Appendix E contains a healthcare provision, the underlying healthcare documents together with the underlying retirement-income documents provide a complete picture of the "pension plan." The retirement-income documents tell half of the story, and the words of Appendix E require us to consider all of it.

Observing that the healthcare provision grants "[c]ontinous health insurance" to retirees and their spouses "during the life of the retiree," plaintiffs reason that this language creates vested, unchangeable benefits. But this thinking chases the tail of the inquiry. Surely a company can promise "continuous health insurance" *and* reserve the right to modify or end that coverage if it becomes unaffordable. That is all the reservation-of-rights clause does. The continuous-coverage clause at all events serves another purpose: It shows that benefits do not automatically terminate when the CBA expires.

Plaintiffs' invocation of durational layoff benefits submits to the same answer. The CBA gives laid-off employees healthcare benefits "for one year." R.98-1 at 16, 18. Comparing this language to Appendix E's "continuous health insurance" language, the plaintiffs reason that the company must have meant to make retiree medical benefits survive indefinitely. Retiree healthcare benefits, true enough, do not automatically terminate after one year or upon expiration of the CBA. But this adds nothing to what we already know. Appendix E grants lifetime ("continuous") healthcare to retirees, unless, as Appendix E also provides, the company later modifies or ends the benefit.

The plaintiffs make much of the fact that the first three paragraphs of Appendix E speak only in terms of traditional pension (read retirement-income) benefits, suggesting (as they see it) that the reservation-of-rights clause in paragraph four applies only to traditional pension benefits. That might be true in some settings, but it is not true here. The heading the parties gave to Appendix E itself contains this traditional reference, as it is labeled in bold in capital letters: "**PENSION PLAN**." Yet plaintiffs must agree that this phrase covers non-traditional pension benefits—namely the retiree healthcare and life-insurance benefits listed in Appendix E. Otherwise, they have no claim. The unvarnished reality is that the pension plan, started as a traditional pension plan but over time, and most especially through the revision in the 1970s, the company and the union extended the plan to other benefits. In contracts, as in statutes, it is not unusual for language over time to cover new technologies and new benefits not contemplated when the language first came into being. *See OfficeMax, Inc. v. United States*, 428 F.3d 583, 593 (6th Cir. 2005). Unless the parties provide otherwise in the agreement, the original language and reservation of rights travels with the plan through each revision. That is all that happened.

Nor does it make a difference that Appendix E sometimes refers to the "pension plan" and sometimes to the "Plan." As the first sentence of the document indicates, the "pension plan" will be thereafter referred to as the "Plan." That there is a later mention of "pension plan" in paragraph five, where the parties describe all of the retirement benefits, does not create a material ambiguity. The short-hand term and the two-word phrase cover the same thing. Indeed, there is no other coherent way to read the document. Surely the parties did not mean the "Plan" to refer only to traditional pension benefits and the "pension plan" only to refer to non-traditional pension benefits, thereby omitting "pension" when they meant to refer to pensions and adding "pension" when they meant to refer to other benefits. All benefits are covered by both terms, and the reservation of rights necessarily applies to all of them.

Everything else raised by the plaintiffs—a declaration from Acument's former general counsel, CBA drafting history, plant-closure agreements, retiree

letters—amounts to extrinsic evidence.  Such extra-contractual intimations of meaning cannot alter the straightforward meaning of the language found within the four corners of Appendix E.

III.

For these reasons, we affirm.

APPENDIX "E"

PENSION PLAN

Subject to approval of the Board of Directors and Stockholders, the Company will revise the pension plan established in 1955, hereinafter referred to as the "Plan", as follows:

1. An insurance Company shall be designated by the Company, and a contract executed between the Company and such insurance company, under the terms of which, a pension fund shall be established to receive and hold contributions payable by the Company, interest, and other income, and to pay the pensions provided by the Plan.

2. The Company by payment of the contributions or amounts provided in the above mentioned insurance company contract shall be relieved of any further liability, and pensions shall be payable only from the insurance fund.

3. In the event of termination of the Plan, there shall be no liability or obligation on the part of the Company to make any further contributions to the pension fund. No liability for the payment of pension benefits under the Plan shall be imposed upon the Company, the Officers, Directors, or Stockholders of the Company.

4. The Company reserves the right to amend, modify, suspend, or terminate the Plan by action of its Board of Directors provided, however, that no such action shall alter the Plan or its operation, except as may be required by the Internal Revenue Service for the purpose of meeting conditions for qualification and tax deductions under Sections 401, 404, and 501(a) of the Internal Revenue Code in respect of employees who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement pertaining to pension benefits as long as any such agreement is in effect.

5. Principal provisions of the pension plan are shown below, but the individual booklets which will be furnished each participant contain full information and will be based on the contract entered into with the insurance company.

Effective Date

January 5, 2000

ELIGIBILITY

All employees who will have completed five (5) or more years of continuous credited service at retirement.

NORMAL RETIREMENT DATE

The normal retirement of all employees will be age sixty-five (65). All employees will be retired on the first day of the month following their 70th birthday or later if required by Federal law.

EARLY RETIREMENT

If you have completed at least five (5) years of credited service, you may retire between age sixty (60) and sixty-five (65). You may elect to receive:

> (a) A pension at age sixty-five (65) based on your credited service up to your early retirement date.

> (b) A pension beginning at your early retirement date based on your credited service up to that date but reduced in accordance with the early retirement table as detailed in the master pension contract as amended effective January 5, 2000 to provide a new reduction schedule as follows:

> > 100% at age 62

> > 85% at age 61

> > 75% at age 60

RETIREE MEDICAL COVERAGE

Continuous health insurance and prescription drug coverage will be provided to current retirees and those who elect early retirement with fifteen (15) years of service at age sixty two (62) or twenty five (25) years of service at age sixty (60) and regular retirement with fifteen (15) years of service who are sixty-five (65) years of age or older. This coverage is provided for the spouse of retirees only during the life of the retiree, except as provided below. In order to receive this payment, retirees may not be employed full time when Medical/RX coverage is available.

Retirees will be required to apply for Medicare parts (A) and (B). The Company will reimburse the retiree for the maximum of the current monthly cost of Medicare part (B) coverage either directly or from the pension fund at the option of the company. Eligible employees hired after 12/31/99 will be ineligible to receive company funded retiree medical benefits, except the reimbursement for Medicare part (B) which will be capped at the monthly rate of $45.50. Employees hired before 12/31/99 who retire will be covered for health insurance through (HMO), (PPO), SelectCare Gold, Care Choice Gold or similar plan available at the option of the Company. (Benefits will be coordinated with Medicare and all benefits will cease upon death of retiree, unless retiree's spouse is under 65 years of age, in which case benefits for the spouse and dependents children of the retiree, will not cease until spouse remarries or reaches age 65.

RETIREMENT INCOME

Pensions will be in the amounts set forth below per month for each year of credited service at retirement with a maximum of thirty-eight (38) years. Current retirees 1985 through 1987 thirty-seven (37) years maximum 1980 through 1984 thirty-five (35) years maximum, 1974 through '1979 thirty-three (33) years maximum, 1973 and prior thirty (30) years maximum.

An employee retiring with less than five (5) years of credited service is not eligible for benefits.

BENEFIT effective January 5, 2000

$32.43 times each credited service year 0 thru 9
Plus
$34.75 times each .credited service year 9.1 thru 14
Plus
$42.75 times each credited service year 14.1 thru 19
Plus
$43.20 times each credited service year 19.1 thru 24
Plus
$43.2 times each credited service year 24.1 thru 38

PAST RETIREE BENEFIT

*Retirees' increased benefits if applicable as set forth in the company proposal will be payable as soon as the program can be revised but not later than May 1, 2000.

VESTED PENSION RIGHTS

Minimum continuous Credited Service - 5 years

DISABILITY INCOME

Employees with at least fifteen (15) years of service who are between the ages of 40 and 65 will be eligible for a pension of $30.00 per month for each year of service in the event of total and permanent disability. At age 65, the employee will receive the regular retirement income based on service at disability date. The maximum payment shall be 25 years of service, less workmen's compensation benefits or any other disability payments as provided in the master pension contract, exclusive of social security disability payments. Subject to Internal Revenue Service approval.

No matter respecting the plan or any differences arising hereunder shall be subject to the grievance procedure established in the collective bargaining agreement between the Company and the Union.

CONTINUED LIFE INSURANCE

Continued life insurance shall be provided for employees who are retired under the pension plan in the amount of $12,000.00.

Retired employees will be permitted to purchase additional insurance by buying an individual policy up to a maximum of $38,000 currently without a medical examination at the insurance company's rates.

———————————

**DISSENT**

———————————

DOWD, District Judge, dissenting.   Whether the language of a contract is ambiguous is a question of law for the court.  Appendix E is at the core of that question in this case.

Appendix E begins by creating a defined term - "Plan" - and uses that defined term consistently in paragraphs 1-4, which includes the reservation of rights clause. Paragraph 5 then switches to the generic undefined term - "pension plan" - below which is listed the "principal provisions of the pension plan."

Following numbered paragraph 5 are three pages of titled, but unnumbered sections.    Among those sections is a provision for "RETIREE MEDICAL COVERAGE," which provides "[c]ontinuous health insurance and prescription drug coverage will be provided to current retirees . . . This coverage is provided for the spouse retirees only during the life of the retiree, except as provided below. . . . (Benefits will be coordinated with Medicare and all benefits will cease upon death of retiree, unless retiree's spouse is under 65 years of age, in which case benefits for the spouse and dependents [sic] children of the retiree, will not cease until spouse remarries or reaches age 65.[)]"

Also following paragraph 5 are two unnumbered sections addressing eligibility and vesting.  The vesting section is titled "VESTED PENSION RIGHTS," and requires minimum continuous credited service of 5 years.

 The language of Appendix E is poorly drafted and not a model of clarity.  At the summary judgment stage, ambiguities and inferences are to be drawn in favor of the non-moving party.  In this judge's view, when that standard is applied to Appendix E, its references to "Plan" and "pension plan" and "continuous health insurance and prescription drug coverage [for] current retirees and . . . spouses of retirees . . ." and

"vested pension rights" are subject to more than one plausible interpretation on the question of whether the benefits at issue are vested or subject to termination.

As a consequence, I would remand this case to the district court for consideration of extrinsic evidence to determine the intent of the parties on the issue of vesting.

For these reasons, I respectfully dissent.