NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0646n.06

No. 13-2708

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 18, 2014
DEBORAH S. HUNT, Clerk

SAAD KHADHER,                                )
                                             )
    Plaintiff – Appellant,                   )
                                             )
v.                                           )   ON APPEAL FROM THE
                                             )   UNITED STATES DISTRICT
PNC BANK, N.A., and FEDERAL HOME LOAN        )   COURT FOR THE EASTERN
MORTGAGE CORPORATION,                        )   DISTRICT OF MICHIGAN
                                             )
    Defendants - Appellees.                  )
                                             )

BEFORE:  COLE, Chief Judge; COOK and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Saad Khadher (Khadher) appeals the district court's grant of summary judgment to Defendants PNC Banks, N.A. (PNC), and Federal Home Loan Mortgage Corporation (Freddie Mac) in this action arising out of a foreclosed mortgage on real estate.  We AFFIRM.

## I. BACKGROUND

On July 2, 2004, Khadher applied for a $155,200 loan from National City Mortgage Services Company (National City)[1] to finance his purchase of a residence at 2624 Rhodes Drive, in Troy, Michigan (Property).  That same day, Khadher received and signed a Truth in Lending Disclosure Statement that stated the loan was an adjustable rate mortgage (ARM), and received a

---

[1] National City Mortgage Services Company assigned the mortgage and adjustable rate note to National City Mortgage Company.  PID 449.  PNC merged with National City Mortgage Company on October 1, 2008.  PID 450-60.

document entitled Good Faith Estimate of Closing Costs in accordance with 12 U.S.C. § 2604(c).[2] On July 9, 2004, Khadher received and signed the Adjustable Rate Mortgage Loan Program Disclosure that outlined the features of the ARM and explained that "monthly payment[s] can increase or decrease substantially based on annual changes in the interest rate."

Khadher's loan application was approved on July 23, 2004 and closing was held. Khadher signed an updated loan application for the same $155,200 loan (Loan), and signed an Adjustable Rate Note (Note) that outlined the provisions for changes in his interest rate. Khadher's Loan was a 30-year ARM with a three-year 4.875% fixed interest rate. Under the Loan terms, the interest rate was subject to change beginning August 1, 2007 and could change every year thereafter (Change Date). The interest rate could not increase or decrease on any single Change Date by more than 2% and could not exceed 10.875%. Khadher also granted a mortgage (Mortgage) on the Property to National City, giving National City the power to sell the property to secure repayment of the Loan. The Mortgage included provisions to accelerate the debt if Khadher defaulted on his loan, and to collect expenses incurred in pursuing remedies in accelerating debt, including reasonable attorney's fees. Khadher also received and signed a Real Estate Settlement Procedures Act (RESPA) Servicing Disclosure that explained Khadher's rights regarding mortgage loans. At his deposition, Khadher testified that he understood at the time he was approved for his loan that he had an ARM.

For the first three years, Khadher made complete and timely monthly $821.34 principal and interest payments. On June 19, 2007, PNC notified Khadher his 4.875% interest rate would increase to 6.875% effective September 1, 2007. On June 19, 2008, Khadher received a

_____

[2] 12 U.S.C. § 2604(c) states, "[e]ach lender shall include with the booklet a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement as prescribed by the Bureau. Each lender shall also include with the booklet a reasonably complete or updated list of homeownership counselors who are certified pursuant to section 106(e) of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701x(e)) and located in the area of the lender."

notification that his rate would decrease from 6.875% to 5.875%. On June 19, 2009, Khadher was sent a notice that his rate had dropped to 4.000%. Consequently, Khadher's payments decreased from $1,004.07 a month in 2007, to $912.50 in 2008, and to $755.60 in 2009. Khadher made all monthly payments up to this point. On June 21, 2010, Khadher received notice that his interest rate again dropped to 3.500% and his payment would be $717.90 effective September 1, 2010. Khadher made his September and October 2010 payments; however, he made his November 2010 payment approximately one month late and made no payment in December 2010, January 2011, or February 2011.

In the beginning of February 2011, Khadher applied to the Making Home Affordable Program (MHAP), seeking hardship assistance offered by PNC. On February 8, 2011, PNC denied the request because the application was incomplete but sent information concerning a workout package. On February 28th, 2011, PNC contacted Khadher to discuss a potential workout package alternative and on March 11, PNC sent Khadher a workout package. Khadher claims that on March 14, he worked with Greenpath, a housing counseling agency, to obtain a loan modification but that PNC did not approve the loan modification. PNC sent a notice dated March 17, 2011, stating Khadher's Loan had been reviewed by the foreclosure committee and was approved for referral to the foreclosure department. The next day, PNC sent another letter stating the Loan had been referred to PNC attorneys who would proceed with the foreclosure. Around March 20, Khadher left for Afghanistan to work as an electrical contractor with the United States Department of Defense. PNC's attorneys, Trott & Trott (Trott), by letter dated March 24, 2011, informed Khadher that PNC had elected to accelerate the total indebtedness. Trott also sent a letter stating the reason for default, the amount owed, the contact information for the mortgage agent, and a statement of Khadher's rights. Additionally, PNC provided

Khadher with a list of housing counselors. The March 24, 2011 letter explained that Khadher had fourteen days to contact Trott with a request for an in-person meeting to discuss foreclosure relief, but Khadher did not contact Trott for a meeting during this time.

In March and April 2011, Khadher sent his $717.90 monthly payments, but did not pay any arrears. PNC deposited these payments but then returned the combined amount to Khadher in a $1,435.80 PNC check because it would not accept partial payment on the accelerated debt. Undeterred, Khadher sent PNC a $717.90 check every month through December 2011. PNC deposited the checks and then returned the amounts sent to Khadher by check, again refusing to accept partial payment of the accelerated debt. In response, Khadher resent PNC the returned checks writing on them, for example, "Sorry, I can not deposit this check because these are my house mortgage payments." PNC then forwarded the unclaimed checks to the State of Michigan pursuant to Michigan's Uniform Unclaimed Property Act, Mich. Comp. Laws Ann. § 567.221 *et seq.*

During this time, by letter dated May 23, 2011, Trott informed Khadher that the reinstatement amount for the Loan was $5,928.90 (for total monthly payments, late charges, inspection fees, and legal fees). Khadher claims the reinstatement amount included double charges for attorney fees and that on June 27, 2011, a PNC representative told him during a telephone conversation that he could send PNC $5,362.00 to reinstate the Loan. However, PNC's internal phone log records reflect that on June 24, 2011, a PNC representative told Khadher that his account was in foreclosure and that PNC did not accept partial payments. The records do not indicate any contact between PNC and Khadher on June 27. Khadher sent a check for $5,362.00 in June 2011 attempting to meet his outstanding payments. Just as it had

with the prior payments, PNC deposited the check but then returned the amount to Khadher through a PNC check.

PNC published the foreclosure sale in the Oakland County Legal News for four consecutive weeks. PNC foreclosed on the Property on April 3, 2012 by a sheriff's sale at which Freddie Mac purchased the Property. The redemption period expired on October 3, 2012. Khadher brought the instant action in Oakland County Circuit Court on September 27, 2012. PNC and Freddie Mac removed the case to the Eastern District Court of Michigan on October 26, 2012. The district court granted PNC summary judgment on November 27, 2013, and Khadher appealed to this court.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Gecewicz v. Henry Ford Macomb Hosp. Corp*., 683 F.3d 316, 321 (6th Cir. 2012). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When analyzing a motion for summary judgment, the court must construe all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986).

## III. DISCUSSION

### A. Fraud

Khadher alleges PNC made misrepresentations that amount to fraud and breach of contract. To prove actionable fraud, Khadher must establish:

> (1) that defendant made a material representation; (2) that it was false; (3) that when [defendant] made it [defendant] knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [defendant] made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that [plaintiff] thereby suffered injury.

*Lawrence M. Clarke, Inc. v. Richco Constr., Inc.*, 803 N.W.2d 151, 162 (Mich. 2011) (citation omitted). Khadher alleges PNC misrepresented the interest rate for the Loan by telling Khadher the rate would be fixed at 5.000% when instead the interest could adjust after three years. However, at his deposition Khadher testified he knew he was applying for an ARM and that he understood at the time his interest rate could change after a number of years. Khadher also signed and received the Truth in Lending Disclosure Statement and the Adjustable Rate Mortgage Loan Program Disclosure that explained ARM loans.

Further, Khadher's claims are barred by a six-year statute of limitations under MICH. COMP. LAWS ANN. § 600.5813.[3] *See Kuebler v. Equitable Life Assur. Soc'y of the U.S.*, 555 N.W.2d 496, 499 (Mich. Ct. App. 1996) (finding § 600.5813 six-year statute of limitations applied to fraud claim).

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

---

[3] "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." MICH. COMP. LAWS ANN. § 600.5813.

MICH. COMP. LAWS ANN. § 600.5827 (footnote omitted).[4]  The Michigan Supreme Court has determined that "an action for fraud accrues under M.C.L. § 600.5827 at the time the wrong was done," not when the action for fraud was or should have been discovered.  *Boyle v. GMC*, 661 N.W.2d 557, 558, 559–60 (Mich. 2003).  Although Khadher was not harmed until September 1, 2007, when the interest rate first changed, his cause of action accrued at closing on July 23, 2004.  Consequently, the action expired on July 23, 2010.

Khadher also asserts that Trott's attorneys' defrauded him by double charging him for attorney's fees.  The May 23, 2011 letter, however, identifies one charge for legal fees and the other for legal costs.  Under the terms of the Mortgage, PNC can collect reasonable attorney's fees and costs incurred in pursuing remedies caused by the borrower's default.  *See United Growth Corp. v. Kelly Mortgage & Inv. Co.*, 272 N.W.2d 340, 344 (Mich. Ct. App. 1978) (holding attorney fees may be allowed for expenses incurred for default).  Khader does not allege that the fees were unreasonable, only that Trott attempted to charge him twice.  Second, Khadher claims the letter's "dates make no sense" because the debt reinstatement quote offered in the letter expired on the date of the letter.  But the letter simply gave the then-current reinstatement amount and explained that if Khadher wanted to reinstate the loan he would need to call for the reinstatement amount subject to final verification by PNC.

Additionally, Khadher argues he reasonably relied on the June 27, 2011, conversation with PNC, during which he was told that his payment was current.  PNC maintains that a PNC representative told Khadher a partial payment would not be accepted.  Viewing the evidence in the light most favorable to Khadher, there is an issue of material fact regarding the amount

---

[4] MICH. COMP. LAWS ANN. §§ 5829 to 5838 "govern the accrual of claims regarding entry on or recovery of land, mutual and open account current, breach of warranty or fitness, common carriers to recover charges or overcharges, life-insurance contracts where the claim is based on the seven-year presumption of death, installment contracts, alimony payments, and malpractice."  *Boyle v. GMC*, 661 N.W.2d 557, 560 n.6 (Mich. 2003).

Khadher was told would reinstate his loan. Nonetheless, Khadher's claim based on the alleged June telephone conversation fails for two reasons. First, as PNC argues, Khadher did not adequately plead this claim. Khadher did not plead misrepresentation or breach of contract based on the June 27, 2011 telephone conversation, nor did he amend or move to amend his pleadings. Rather, Khadher first raised these claims in his response to PNC's motion for summary judgment. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).

Second, even accepting the improperly pled allegation, the Michigan statute of frauds bars Khadher's claim. Pursuant to MICH. COMP. LAWS ANN. § 566.132(2):

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

*Id.* Khadher cannot point to any writing in connection with either the telephone conversation or the assertion that PNC would accept $5,362.00. Courts have "interpret[ed] M.C.L. § 566.132(2) . . . to preclude *all* actions for the enumerated promises and commitments, including actions for promissory estoppel."[5] *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct.

---

[5] The Michigan legislature added § 566.132(2) in 1992. *Crown*, 619 N.W.2d at 71. As noted in *Crown*,

> The statute of frauds specifically bars 'an action.' By not specifying what sort of 'action' M.C.L. § 566.132(2); MSA 26.922(2) prohibits, we read this as an unqualified and broad ban. We also note that the subsections of M.C.L. § 566.132(2); MSA 26.922(2) use generic and encompassing terms to describe the types of promises or commitments that the statute of frauds now protects absolutely. This is consistent with interpreting M.C.L. § 566.132(2); MSA 26.922(2) to preclude *all* actions for the enumerated promises and commitments, including actions for promissory estoppel. Further, it would make absolutely no sense to conclude that the Legislature enacted a

App. 2000). Khadher's claims are therefore barred under § 566.132(2). As to the fraud claims, the district court properly granted PNC summary judgment.

## B. Breach of Contract

To prove a breach of contract, Khadher must establish there was a contract that PNC breached and the breach resulted in damages to Khadher. *Dunn v. Bennett*, 846 N.W.2d 75, 79 (Mich. Ct. App. 2013). Khadher points to no specific contractual term PNC breached, nor does he identify evidence that supports his breach of contract claim. "Issues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited." *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013). Yet, even after our thorough review of the record, there is no evidence PNC breached its contract. The district court properly granted summary judgment in favor of PNC on Khadher's breach of contract claims.

## C. Quiet Title

MICH. COMP. LAWS ANN. § 600.2932 allows Khadher to bring an equitable action to quiet title. Mich. Ct. R. 3.411 gives the requirements for "actions to determine interests in land under MCL 600.2932." Mich. Ct. R. 3.411(A). In order to state a claim for quiet title under § 600.2932, Khadher must allege: "(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." Mich. Ct. R. 3.411(B)(2). "In an action to quiet title, the plaintiff[] ha[s] the burden of proof and must make out a prima facie case of title. If the plaintiff[] make[s] out a prima facie case, the defendant[] then ha[s] the burden of proving superior right or title in

---

new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements.

*Id.* at 72; *see also Barclae v. Zarb*, 834 N.W.2d 100, 111 (Mich. Ct. App. 2013).

themselves." *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999). Khadher does not present evidence establishing a superior claim of ownership in the Property.

Khadher also proposes that the court use its equitable powers to quiet title based on fraud, deceit, and intentional violations of statutory duties.[6] Although Michigan courts have recognized that an action to quiet title can be a remedy for fraud, there is no actionable fraud to remedy here. *See Missouri v. MWG Prop. Consultants*, No. 04-425782-CH, 2008 Mich. App. LEXIS 1232, at *5–6 (Mich. Ct. App. June 12, 2008) (recognizing actions to quiet title are equitable in nature and a court sitting in equity has jurisdiction to quiet title as a remedy for fraud).[7] Even if intentional violations of statutory duties allowed the court to exercise its equitable powers to quiet title, Khadher points to no evidence of such violations to warrant this equitable remedy. The district court properly granted summary judgment in favor of PNC on Khadher's claim to quiet title.

**D. TILA**

Khadher testified on deposition that he signed the TILA disclosure document and other documents that disclosed all material aspects of the loan. Khadher claims there was a negative amortization of the Mortgage that was not disclosed to him.[8] However, the loan payment history

---

[6] The statutory duties Khadher claims PNC intentionally violated are MICH. COMP. LAWS ANN. § 600.3204 (governing requirements for advertising foreclosures) and MICH. COMP. LAWS ANN. § 600.3205a (repealed 2014) (specifying requirements for notices from foreclosing party to borrower). Khadher also alleges PNC committed RESPA and TILA violations.

[7] "Actions to quiet title are 'equitable in nature.' Here, plaintiff seeks to quiet title by extinguishing [defendant]'s mortgage interest in the property as a remedy for fraud. A court sitting in equity has jurisdiction to quiet title as a remedy for a fraudulent conveyance." *MWG Prop. Consultants*, 2008 Mich. App. LEXIS 1232 at *5-6.

[8] "Negative amortization, which occurs when the periodic payment on a debt instrument is less than the accrued interest, refers to an increase in the outstanding balance between one payment and the next. The outstanding balance of a loan rises during the period of negative amortization, even though the borrower is making regular payments, because the accrued but unpaid interest is added to the outstanding balance of the loan." Michael S. Knoll, *Taxation, Negative Amortization and Affordable Mortgages*, 53 Ohio St. L.J. 1341, 1341 (1992).

proves there is no support for Khadher's argument as the principal loan balance decreased every month prior to the default.

Khadher also claims PNC charged excessive legal fees and penalties but provides no evidence that the fees violated the Mortgage contract. Moreover, Khadher alleges that the contract in this case violates 15 U.S.C. §§ 1692e, 1692f, and 1692j, provisions of the Fair Debt Collections Practices Act (FDCPA) that protect debtors from unfair debt-collection practices.

Khadher's argument fails because he does not explain how PNC violated these sections, does not offer evidence of the alleged violations, and, in any event, Khadher's TILA claims are barred by the one-year statute of limitations. 15 U.S.C § 1692k ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs."). For claims arising under 15 U.S.C. § 1639(f), pertaining to negative amortization, the statute of limitations is extended to three years from "the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The "occurrence of the violation" was July 23, 2004, the day Khadher entered into the Loan agreement. *See Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 (6th Cir. 1980); *see also Harvey v. Ameriquest Mortg. Co.,* No. 10-12246, 2010 WL 4386976, at *3 (E.D. Mich. Oct. 29, 2010) (interpreting "occurrence of the violation" as "the date the plaintiff enters the loan agreement") (citation omitted). Any claims arising under TILA expired in 2005 and any claims arising under § 1639 expired in 2007. Khadher filed his complaint in 2012.

Khadher also cites "12 CFR 108 & 130" to support the proposition that "[t]here is no limit on willful violations intended to mislead consumers . . . ." Appellant Br. 7-8. A panel of this court recently rejected the same argument:

> Plaintiffs contend that 'the statute of limitations applicable to the instant matter is
> 12 CFR 108 & 130, which provides that there is no time limit on willful violations

of RESPA or TILA' that were intended to mislead a consumer. This Court, like the district court, was unable to find the Code of Federal Regulation sections that Plaintiffs cite and also could not find any case law to support Plaintiffs' contention. Plaintiffs' frivolous argument has no merit or basis. Therefore, the district court's dismissal of Count I and Count III's allegations of TILA violations is affirmed because these claims are time barred.

*Shaya v. Countrywide Home Loans, Inc.*, 489 F. App'x 815, 818–19 (6th Cir. 2012) (footnote omitted).

Khadher additionally argues that Title XIV of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), codified in part in 15 U.S.C. § 1640(k), provides a defense to foreclosures by allowing a consumer to assert a claim based on a violation of the ability to repay requirements without regard to the applicable statute of limitations. *See* 15 U.S.C. § 1640(k). Section 1640(k) states, "a consumer may assert a violation by a creditor of paragraph (1) or (2) of section 1639b(c) of this title, or of section 1639c(a) of this title, as a matter of defense by recoupment or set off without regard for the time limit on a private action for damages under subsection (e)." *Id.* Section 1639b(c) has no application here.[9] As to section 1639c(a), it requires creditors, before offering residential mortgage loans, to make "a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan . . . ." There is no evidence that National City, at the time it granted Khadher the Loan, failed to conduct such a determination. First, National City required Khadher to complete two loan applications to determine his financial solvency. Second, Khadher made full payments to National City and its

---

[9] 15 U.S.C. § 1639b(c)(1) provides limitations on mortgage originators receiving compensation tied to a loan's terms while 15 U.S.C. § 1639b(c)(2) prohibits mortgage originators from receiving dual compensation from both the borrower and a third party.

successor, PNC, from September 2004 through November 2010, demonstrating he was able to meet the Loan payments at closing.[10]

The district court properly granted PNC summary judgment on the TILA claims.

## E. RESPA

The Real Estate Settlement Procedures Act (RESPA) places guidelines on closing costs and settlement procedures and requires that consumers receive various disclosures throughout their mortgage settlement. *See* 12 U.S.C. § 2601 *et seq*. Khadher argued below that PNC violated 24 C.F.R. § 3500.6(a) (now codified as 12 C.F.R. § 1024.6), which directs a lender to provide a special information booklet to the borrower. *See* 12 C.F.R. § 1024.6. However, although Congress explicitly created a private right of action for violations of other provisions of RESPA, it does not appear to have done so for violations of 21 U.S.C. § 2604, the RESPA statute underlying the regulations at issue. *See Collins v. FMHA*-USDA, 105 F.3d 1366, 1367 (11th Cir. 1997); Carr *v. Home Tech Co, Inc*., 476 F. Supp.2d 859, 869 (W.D. Tenn. 2007) (both finding there is no private right of action for violations of § 2604(c)). The district court did not err in dismissing this claim.

## F. MICH. COMP. LAWS ANN. § 600.3204 Violation

Khadher argues that PNC did not meet all of the provisions required for foreclosure by advertisement under MICH. COMP. LAWS ANN. § 600.3204 and the foreclosure is therefore invalid. Khadher cites § 600.3204(1) and states that judicial construction is permitted if a statute is ambiguous, but does not explain how § 600.3204(1) is unclear. PNC provides evidence that

---

[10] Khadher also cites MICH. COMP. LAWS ANN. § 600.5807 six-year statute of limitations period for a breach of contract claim, but Michigan's state law provision does not extend the statute of limitations period for claims of federal TILA violation. We need not address this claim.

all provisions in the statute were met and Khadher does not point to conflicting evidence.[11]

Khadher additionally argues that a foreclosure by advertisement that violates § 600.3204(4) is void. Again, Khadher does not point to any evidence to demonstrate PNC failed to comply with § 600.3204(4).[12] PNC complied with § 600.3205a's requirements for notices from the foreclosing party to the borrower. *See* MICH. COMP. LAWS ANN. § 600.3205a (repealed 2012 by Mich. Pub. Acts 521). PNC gave Khadher written notice containing all necessary information, including the reasons the mortgage loan was in default, the amount owed under the mortgage loan, the contact information of the mortgage agent, a list of housing counselors, information on Khadher's rights, and the number of days in the redemption period. *See* § 600.3205a (2011). PNC also posted a notice of the pending foreclosure sale on the door of Khadher's home and PNC published the same notice in a newspaper in the county where the Property was situated, pursuant to § 600.3208. The district court properly granted PNC summary judgment on the alleged state statutory violation claims.

## G. Accord and Satisfaction Claim

Khadher also asserts an accord and satisfaction claim pursuant to MICH. COMP. LAWS ANN. § 440.3311. Section 440.3311 provides,

> (1) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

---

[11] Pursuant to § 600.3204(1)(a), a default had occurred so that the power to sell had become operative. Similarly, under § 600.3204(1)(b) there was not an action to recover the debt secured by the mortgage. As required by § 600.3204(1)(c), the mortgage containing the power of sale was properly recorded. Finally, PNC, as the foreclosing party, was the owner of the indebtedness secured by the mortgage pursuant to § 600.3204(1)(d). PNC met all statutory requirements.

[12] *See* § 600.3204(4) (2011). Subsection 4, which pertains to mortgages on properties claimed as principal residences, was deleted by 2014 Mich. Pub. Acts 125. Pursuant to § 600.3204(4), PNC mailed a notice of foreclosure, Khadher did not request a meeting with the designated mortgage agent, and there was no agreement to modify the mortgage loan.

> (2) Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

*Id.* Khadher tendered payments to PNC for the outstanding debt. PNC deposited the checks and then mailed back to Khadher PNC checks for the amount Khadher sent. The district court correctly found Khadher did not have a claim for accord and satisfaction because accord and satisfaction is a defense to a claim seeking satisfaction of a debt, not a cause of action. *Khadher v. PNC, Nat. Ass'n*, No. 12-14765, 2013 WL 6196949, at *7 (E.D. Mich. Nov. 27, 2013) (citing, *inter alia*, *Nationwide Mut. Ins. Co. v. Quality Builders, Inc.,* 482 N.W.2d 474, 476 (Mich. Ct. App. 1992)).

Even if Khadher could assert accord and satisfaction as a defense to PNC's foreclosure, and not as a claim against PNC, as the district court interpreted, Khadher has not identified evidence of an instrument or an accompanying document that contained a conspicuous statement declaring the instrument was tendered as full satisfaction of the claim. MICH. COMP. LAWS ANN. § 440.3311(2). Summary judgment was properly granted on the accord and satisfaction claim.

## H. Injunctive Relief Claim

Khadher also argues he is entitled to injunctive relief. A court can only enjoin a foreclosure as a remedy, not as a separate cause of action. *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013). Summary judgment was properly granted on this claim as well.

## IV. CONCLUSION

We AFFIRM.