**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0623n.06

**No. 17-2246**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANTHONY CECE, et al., | ) | **FILED** |
| | ) | Dec 17, 2018 |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| WAYNE COUNTY, et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | OPINION |

**BEFORE: NORRIS, DONALD, and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** This appeal concerns health-insurance premium obligations under several collective bargaining agreements ("CBAs") and memoranda of agreement ("MOAs") entered into by the government of Wayne County, Michigan with unions representing law enforcement employees. Plaintiffs-Appellants are retired Wayne County Sheriff's Officers, Sergeants, and Lieutenants. Defendants-Appellees are Wayne County, along with Robert Ficano and Warren Evans, sued in both their individual capacities and their official capacities as County Executives of Wayne County.

The MOAs address, among other things, the cost Appellants must bear of their health-insurance premiums in retirement. The MOAs provide that Appellants' contribution obligations when they retired would be the same as those of former union members who had already retired when the MOAs were executed (the "formerly retired members"). For years after Appellants retired, the formerly retired members were not required to contribute to the cost of their insurance premiums, and thus, Appellants too received their health insurance at no premium cost. This

arrangement changed in 2014, when Wayne County began requiring the formerly retired members to pay a portion of their premiums, and likewise, Appellants had to begin contributing the same amount.

Appellants then brought this suit, arguing that the MOAs promised that Appellants would never have to contribute to the cost of their health-insurance premiums, and as a result, Wayne County breached the contract by charging them for a portion of their premiums. Appellants also alleged a claim under 42 U.S.C. § 1983. The district court granted summary judgment in favor of Wayne County. For reasons explained below, we **AFFIRM**.

## I. BACKGROUND

Both sides briefed, at length, the long collective bargaining history between Wayne County and the unions involved—the Sergeants' and Lieutenants' union ("Local 3317") and the Sheriff's Officers' Union, Local 502/the Police Officers Association of Michigan ("POAM"). We summarize below the portions of this bargaining history as relevant to our analysis.

### A.     *POAM*

In July 2009, POAM entered into a MOA with Wayne County. Among other things, the July 2009 MOA addressed health-insurance premium costs by providing that employees retiring under the MOA "will be allowed to retire with the same health care plan premium contribution liability as individuals who retired prior to January 1, 2008" and that "plan coverage, eligibility and benefits will be in accordance with the language of the 2008–2011 CBA."

So, we next turn to the 2008–2011 CBA. In August of 2009, POAM and Wayne County effectuated the CBA covering the years 2008 to 2011. The 2008–2011 CBA carried over the premium contribution requirements for retirees contained in the December 12, 2007 Act 312 Awards for Local 502 (the predecessor union of POAM).

Thus, we next consider the relevant Act 312 Awards. The December 12, 2007 Act 312 Awards, the product of Act 312 Arbitrations between the parties, required both active employees and retired individuals to contribute to the cost of their health-insurance premiums in retirement. However, the individuals who retired before the issuance of the Act 312 Awards remained governed by the 2000–2004 CBA.

The 2000–2004 CBA originated in 2001, when Local 502 entered into the CBA with Wayne County to cover the years 2000 to 2004. Significant to this case, the 2000–2004 CBA did not explicitly address the payment of health-insurance premiums for individuals who retired under that CBA. Instead, the 2000–2004 CBA incorporated by reference certain provisions from the Wayne County Health and Welfare Benefit Plan (the "1990 HWBP") relevant to retiree health care.

The 1990 HWBP stated that Wayne County would "continue to provide health benefits at its expense to eligible retirees and their legal dependents" but that the "County reserves the right to modify, amend, replace and/or discontinue any retiree health benefit provisions applicable to retirees." This reservation, as explained below, is key to the resolution of this dispute.

**B.    *Local 3317***

In September of 2009, Local 3317 entered into a MOA with Wayne County, extending the terms of the August 28, 2009 MOA between the parties. The June and August 2009 MOAs between Local 3317 and Wayne County extended the terms of the parties' October 2008 MOA.[1] Among other things, the October 2008 MOA addressed health-insurance premium costs by providing that employees retiring under the MOA "will be allowed to retire with the same health care plan

---

[1] The September 2009 MOA clarified that the reference to "the retirement incentive provisions associated with the 2008–2011 CBA" in the August 28, 2009 MOA "is clarified to mean the retirement incentive provisions associated with the Memorandum of Agreement executed by the parties on October 30, 2008."

contribution liability as individuals who retired on or before the issuance of the May 2, 2007 Act 312 award."

We then examine the May 2, 2017 Act 312 Award. The Award required both active employees and retired individuals to contribute to the cost of their health-insurance premiums in retirement. However, individuals who retired before the issuance of the Act 312 Awards remained governed by the 2000–2004 CBA.

The 2000–2004 CBA originated in 2001, when Local 3317 entered into a CBA with Wayne County covering the years 2000 to 2004. As is the case with Local 502's CBA for the same time period, Local 3317's 2000–2004 CBA did not explicitly address the payment of health-insurance premiums for individuals who retired under the CBA. Instead, Local 3317's 2000–2004 CBA, like Local 502's 2000–2004 CBA, incorporated by reference certain provisions from the 1990 HWBP relevant to retiree health care, including that Wayne County would "continue to provide health benefits at its expense to eligible retirees and their legal dependents," but that—and here is the key language again—the "County reserves the right to modify, amend, replace and/or discontinue any retiree health benefit provisions applicable to retirees."

In January 2014, Wayne County, facing financial difficulty, began assessing premium contributions of approximately $90 per month to the pre-Act 312 Award retirees premised on the 1990 HWBP's reservation-of-rights clause. The County also began requiring the MOA retirees to contribute the same amount to the cost of their health-insurance premiums, because the MOAs mandated that they would have the same contribution liability as the union members who retired before the Act 312 Awards.

Appellants filed suit on February 4, 2016, alleging breach of contract as well as unconstitutional deprivation of property without due process, both premised on the argument that

Wayne County promised Appellants premium-free health insurance for life pursuant to the MOAs. Wayne County subsequently filed for summary judgment, arguing, in part, that Appellants were not promised premium-free health insurance for life by the MOAs or otherwise. On June 26, 2017, the district court ruled, during oral argument, in favor of Wayne County and granted summary judgment on the basis that the MOAs did not provide for permanent lifetime zero contributions for health-insurance premiums and that the MOAs tied Appellants' health-insurance-premium contributions to those of prior retirees.

Appellants seek reversal, arguing that: (1) Wayne County breached its contractual obligations under the MOAs by charging them health-insurance premiums; (2) Wayne County unconstitutionally deprived Appellants of their property interest without due process, in violation of the Fourteenth Amendment; and (3) Appellants have a right to lifetime contribution-free health-insurance premiums under the theory of promissory estoppel.

## II. ANALYSIS

We review de novo a district court's grant of summary judgment, *Domingo v. Kowalski*, 810 F.3d 403, 410 (6th Cir. 2016), construing the evidence in the light most favorable to the nonmovant, *Villegas v. Metropolitan Government of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A.    *Breach of Contract*

We first examine whether the district court erred in disposing of Appellants' breach-of-contract claim (Count I).

Appellants argue that the district court committed reversible error by making a "factual determination" that the 1990 HWBP was controlling with respect to the MOAs entered into between Appellants and Wayne County, and therefore, an issue of fact exists with respect to whether the parties agreed that Appellants would not have to make contributions to their health-insurance premiums. Appellants' arguments are unpersuasive.

"Questions of contract interpretation . . . generally are considered to be questions of law subject to *de novo* review." *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 409 F.3d 342, 346 (6th Cir. 2005). Agreements negotiated by labor unions on behalf of their membership are to be interpreted according to ordinary principles of contract law. *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018); *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015); *Gallo v. Moen Inc.*, 813 F.3d 265, 268 (6th Cir. 2016). Michigan courts have recognized this principle with respect to contract interpretation involving labor unions. *Harper Woods Retirees' Ass'n v. City of Harper Woods*, 312 Mich. App. 500, 511–14 (2015); *see also Serafino v. City of Hamtramck*, 707 F. App'x 345, 352 (6th Cir. 2017) (applying *Tackett* and *Gallo* to a Michigan CBA breach of contract action and finding that Michigan courts "have unanimously endorsed *Tackett*'s reasoning in both the private- and public-sector context").

"The first and best way to divine the intent of the parties is from the four corners of their contract and from traditional canons of contract interpretation." *Gallo*, 813 F.3d at 273. Absent ambiguity in the contract, there is no basis for going beyond the four corners of the agreement itself. *Id.* at 274; *see also Tackett*, 135 S. Ct. at 933, 938 ("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent," and "[w]hen the intent of the parties is unambiguously expressed in the contract, that expression controls.").

The MOAs and related agreements in question are unambiguous. For retirees of Local 3317, the relevant MOA language states that the retirees "will be allowed to retire with the same health care plan contribution liability as individuals who retired on or before the issuance of the May 2, 2007 Act 312 Award." Similarly, the POAM MOA language states that eligible POAM members "will be allowed to retire with the same health care plan premium contribution liability as individuals who retired prior to January 1, 2008." Nothing in the relevant language cited above or by the parties in their briefing creates an ambiguity with respect to whether the Appellants are entitled to premium-free health insurance. The parties explicitly tied the MOA retirees' contribution liability to the contribution liability of those individuals who retired before May 2, 2007 for Local 3317 and January 1, 2008 for POAM. Therefore, under the MOAs, Appellants' health-insurance premium contribution liability was tied to the liability of union members who retired before the issuance of the Act 312 Awards.

Because the MOAs tied Appellants' health-insurance contribution liability to the liability of the pre-Act 312 Award retirees, if the pre-Act 312 Award retirees' premium liability changed, so too would Appellants' premium liability. Thus, our next step is to determine whether the County had the right to change the premium liability and require the pre-Act 312 Award retirees to contribute to the cost of their health-insurance premiums.

The MOA and relevant agreements show that the County had the right to require the pre-Act 312 Award retirees to contribute to the cost of their health-insurance premiums. The 2000–2004 CBAs for Local 3317 and Local 502 applied to the pre-Act 312 Award retirees. The 2000–2004 CBAs did not address health-insurance premiums for retirees and instead, incorporated the 1990 HWBP's language regarding health-care benefits. The 1990 HWBP contained a clause regarding health care benefits stating that Wayne County had the "right to modify, amend, replace,

and/or discontinue any retiree health benefit provisions applicable to retirees." The County therefore had the legal authority under the unambiguous language of the 2000–2004 CBAs to require the pre-Act 312 Award retirees to contribute to the cost of their health-insurance premiums. *See Witmer v. Acument Glob. Techs., Inc.*, 694 F.3d 774, 777 (6th Cir. 2012) ("Surely a company can promise 'continuous health insurance' *and* reserve the right to modify or end that coverage if it becomes unaffordable. That is all the reservation-of-rights clause does.").

As referenced above, the MOAs tied Appellants' health-insurance contribution liability to the liability of the pre-Act 312 Award retirees, and so if the pre-Act 312 Award retirees' premium liability changed, so too would Appellants' premium liability. Consequently, when the County exercised its right under the 1990 HWBP to require the pre-Act 312 Award retirees to contribute to the cost of their premiums, Appellants' obligation to contribute the same amount was lawfully triggered.

In sum, under the unambiguous language of the MOAs, Appellants were required to contribute the same amount towards the cost of their insurance premiums as the individuals who retired before the Act 312 Awards. Though the individuals who retired before the Act 312 Awards were not making premium contributions when the MOAs were executed, pursuant to the terms of the 1990 HWBP, which were incorporated by reference into the operative CBA, the County had the right to impose contribution liability. Thus, Appellants were not guaranteed premium-free insurance. Because Appellants' breach-of-contract claim is erroneously premised on the contention that the MOAs guaranteed premium-free insurance, summary judgment was properly granted.[2]

---

[2] Wayne County posits an argument in the alternative, arguing that even if Appellants can demonstrate that the MOAs promised they would receive premium-free health insurance—in other words, if Appellants are able to demonstrate that their premium-contribution liability is not tied to the prior retirees—the MOAs and the related 2008–2011 CBAs do not promise lifetime benefits. Because the relevant MOAs unambiguously

The breach-of-contract claims against Evans and Ficano were also properly dismissed by the trial court because Evans and Ficano were not parties to the contracts or third-party beneficiaries. As non-parties, they cannot be contractually liable for the breach of the MOAs/CBAs. *See Khadher v. PNC Bank, N.A.*, 577 F. App'x 470, 477 (6th Cir. 2014) (explaining that to prove a breach of contract a plaintiff must establish that defendants breached the contract).

**B.      42 U.S.C. § 1983**

Appellants are also not entitled to relief under 42 U.S.C. § 1983 for unconstitutional deprivation of their alleged property interest in lifetime contribution-free health-insurance premiums without due process. At the outset, a party must demonstrate that a constitutionally protected property interest exists in the first place. *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972); *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1271 (6th Cir. 1988). As explained above, Appellants have not demonstrated that they are entitled to premium-free health-insurance under the MOAs and relevant agreements. Therefore, Appellants do not have a property interest to be deprived of under § 1983.

Appellants argue that a 2015 settlement between the County and a class of former retirees (the MacDonald settlement class) applies to them, and, as a result, the benefits they are claiming in this matter are vested. But, they did not raise this argument in the district court. "It is well-settled that issues not presented to the district court but raised for the first time on appeal are not properly before this court," *Kusens v. Pascal Co.*, 448 F.3d 349, 368 (6th Cir. 2006), and "[t]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal," *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006).

---

establish that the Appellants' premium obligations were tied to those of the pre-Act 312 Award retirees, and the operative CBAs allowed Wayne County to change the contribution obligations of the retirees, we decline to analyze this alternative argument.

### C.     *Promissory Estoppel*

Appellants' promissory estoppel argument is similarly unavailing; thus, the district court properly rejected Appellants' motion for reconsideration based on the promissory-estoppel theory.

First, Appellants did not raise the promissory-estoppel claim in their original complaint or their four amended complaints; nor did Appellants raise this issue in their summary judgment briefing. The complaints all allege "unconstitutional deprivation of property interest without due process under the Fourteenth Amendment of the U.S. Constitution, without just compensation— 42 U.S.C. § 1983" and "breach of contract." A reasonable reading of the complaints does not disclose that Appellants intended to bring a promissory-estoppel claim. "Because there is no duty (on the part) of the trial court or the appellate court to create a claim which appellant has not spelled out in his pleading," the district court properly denied the motion for reconsideration. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (citation omitted).

Besides the several procedural defects with Appellants' assertion of promissory estoppel, Appellants' argument is substantively defective, as they have failed to demonstrate how their promissory-estoppel claim is not precluded by the existence of the MOAs, which cover precisely the same subject matter as the alleged promise Appellants assert provides the basis for promissory estoppel—namely, contribution-free health-insurance premiums. *See, e.g.*, *APJ Assoc. v. N. Am. Philips Corp.*, 317 F.3d 610, 616 (6th Cir. 2003) (stating that under Michigan law, "[p]romissory estoppel may not be used to override the express agreement of the parties contained in written agreements"); *cf. Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008) ("[N]o action for promissory estoppel may lie when an oral promise expressly contradicts the language of a binding contract.")

### III. MOTION FOR JUDICIAL NOTICE

On May 1, 2018, Wayne County filed a motion for judicial notice, requesting that we take notice of three documents: an excerpt of a deposition transcript and two CBAs.

According to Federal Rule of Evidence 201(b), a "court may judicially notice a[n] [adjudicative] fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "This standard applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012). However, "[j]udicial notice is only appropriate if 'the matter [is] beyond reasonable controversy . . . . The rule proceeds upon the theory that . . . dispensing with traditional methods of proof [should only occur] in clear cases.'" *Id.* (quoting Fed. R. Evid. 201(b) advisory committee's note). Moreover, "[f]or a court to take judicial notice of a fact, that fact must be relevant to the ultimate issue that the jury must decide." *United States v. Houston*, 110 F. App'x 536, 545 (6th Cir. 2004); *see also Bronson v. Bd. of Educ. of the City Sch. Dist. of the City of Cincinnati*, 687 F.2d 836, 839 (6th Cir. 1982) (noting the district court's judicial notice of facts is limited to those facts relevant to the ultimate issue to be decided).

Wayne County argues that the deposition-transcript excerpt was referenced in the briefing with the district court, but the excerpt was inadvertently not included in the record. At this stage, Wayne County seeks to introduce the excerpt "for the Court's factual background only regarding the history of retirement incentive negotiations" and argues that "this factual background is not disputed." As the history of the collective bargaining between the parties is not disputed, and we

are thus able to determine which agreement is controlling, the court finds that introduction of the excerpt is not relevant to the court's resolution of this case.

Wayne County also asks us to take judicial notice of two CBAs. The motion, as well as the additional citation noted by the appellants, asks that we conclude that the CBAs "expired pursuant to [their] general durational clause[s], which provided that [they] would remain in full force and effect through" a particular date. Essentially, Wayne County asks us to evaluate the substance of the CBAs and conclude that we are "satisfied that the [CBAs were] terminated." Appellants ask us to consider arguments regarding whether the "general durational clause" affects the CBAs and MOAs. *See Fletcher*, 892 F.3d 217, 223 (6th Cir. 2018) (holding that "a CBA's general durational clause applies to healthcare benefits unless it contains clear, affirmative language indicating the contrary").

Determination of whether the CBAs are terminated is not relevant or necessary to resolve this action. Because we hold that the contracts unambiguously maintain that the MOAs tie Appellants' premium obligations to those of the pre-Act 312 Award retirees, and the operative contracts allow Wayne County to change the contribution obligations of the retirees, we decline to analyze the alternative argument regarding the durational clause contained in the CBAs. Thus, introduction of the CBAs for the purposes of evaluating their expiration is irrelevant.

Accordingly, we deny the motion for judicial notice.

## IV. CONCLUSION

For the above-mentioned reasons, the judgment of the district court is **AFFIRMED**.